# CHARLESTON.

RITCHIE LUMBER CO. *v.* NUTTER.

Submitted February 9, 1909. Decided December 14, 1909.

1. MUNICIPAL CORPORATIONS—*Tax Sales—Delinquent List—Return —Record.*

   It is essential to the validity of a tax deed that the delinquent list should have been returned to the office of the clerk of the county court, before a sale of the land, and by him recorded in a permanent book to be kept in his office for that purpose, and thereby made a part of the proceedings of record in his office affecting the tax title. (p. 448).

2. SAME—*City Taxes—Delinquent List—Return—Certification.*

   Depositing in the county court clerk's office a book containing the list of real estate returned delinquent for the non-payment of city taxes, entered therein by the city auditor, and in no way attested by the county clerk, does not make such delinquent list a part of the records of said clerk's office. (p. 448).

3. SAME—*City Taxes—Delinquent List—Record.*

   In order to constitute a record it must be the act of an officer duly authorized and empowered to act in the premises. (p. 449).

4. SAME—*City Taxes—Delinquent List—Returns—Delay—Irregularity."*

   The failure of a city tax collector to make return to the city council, within the time prescribed by the city charter, of a

list of the real estate delinquent for the non-payment of city tax, will not render invalid a tax deed; such failure to make return within the time specified is only an "irregularity" in making the return which is cured by section 25, chapter 31, Code. (p. 451).

Appeal from Circuit Court, Wood County.

Suit by the Ritchie Lumber Company against T. E. Nutter. Decree for defendant, and plaintiff appeals.

*Reversed and Remanded.*

*F. P. Moats,* for appellant.

*Brown & Blizzard,* for appellee.

WILLIAMS, JUDGE:

Plaintiff brought a suit in equity in the circuit court of Wood county to concel a tax deed as constituting a cloud upon its title to a certain lot of ground situated in the city of Parkersburg. On the 20th of March, 1908, relief was denied and plaintiff's bill dismissed. From this decree it has appealed.

The following are the facts, viz:   On the 22nd of April, 1902, E. G. Martin and L. D. Nutter conveyed to plaintiff the lot in question. The city collector returned it delinquent, June 15, 1904, in the name of E. G. Martin and L. D. Nutter for the non-payment of the city taxes due thereon for the year 1902, and on October 12, 1904, the city council, by order of record, directed the city auditor to certify the delinquency to the State auditor; he did so February 28, 1905; and the State auditor certified it to the sheriff of Wood county for sale for non-payment of municipal taxes about November 1, 1905. All state, county and district taxes had been paid. The lot was sold in January, 1906, and purchased by the defendant at $12.66, the amount of taxes, interest and commissions then charged against it; and on the 4th day of January, 1907, the clerk of the county court executed to defendant a deed for the lot. The plaintiff in its bill makes a tender of $30.00 to reimburse defendant for the amount of expenses incurred by him in obtaining his deed.

The delinquent list was not recorded by the clerk of the county court in his office. But it appears that the city coun-

cil had provided a well bound, permanent book, and had placed it in the county clerk's office; that this book was placed in the office and a "receiving stamp," whatever this means, placed on the first page showing date September 28, 1903; that this book was labeled "Real Estate Delinquent Book, City of Parkersburg"; that it contained the delinquent list in question, entered therein by the city auditor; that it was the custom of the city auditor to take this book out of the county court clerk's office at times of making out the city delinquent list and to keep it in his own office for a period of a week or ten days at a time, after which it would be returned to the county clerk's office; that the city auditor made all the records contained in said book; that the records therein were not signed by the county clerk, or in any way attested by him, or his deputy; and that no copy of the real estate delinquent for the non-payment of the city taxes was filed in the county clerk's office, other than the entry in the book made by the city auditor.

At the time the lot was returned delinquent, the amended charter of the City of Parkersburg was in effect, containing the following provision in relation to the recordation of the delinquent list after it has been examined by the city council and found to be correct, viz: "A copy of said delinquent list, immediately after confirmation by the council, shall be filed in the office of the clerk of the county court of Wood county, and recorded in a well bound, permanent book, to be furnished by the city and kept and preserved in said office for that purpose."

The case presents the following questions, viz:

First, is it essential to the validity of a tax deed that the list of delinquent real estate should be recorded in the county court clerk's office?

Second, is the filing of a book in the county court clerk's office, containing the entries made by the city auditor, not attested or authenticated by the clerk, a recording by the county clerk?

Third, is the failure of the county clerk to record the delinquent list such a defect in the proceedings under which a tax deed is acquired as is cured by section 25, chapter 31, Code?

Fourth, must the delinquent list be returned by the city col-

lector to the city council strictly within the time designated in
the municipal charter in order to make valid a tax deed?

In reply to the first point, it may be said that the general
policy of the law is to preserve a record, in permanent form,
of all matters relating to, or affecting, title to real estate,
in the county court clerk's office. Concerning land returned
delinquent by the sheriff for non-payment of state, county and
district taxes, section 24, chapter 30, Code, provides that:
"The original list shall be preserved by the clerk in his office,
and the list of real estate delinquent shall be recorded by the
clerk in a well bound book to be kept by him for the purpose."
The provision above quoted from the city charter just as clearly
intends that the list of real estate delinquent for non-pay-
ment of city taxes shall also be recorded by the county clerk
in his offce. The city is only required by the act to fur-
nish the book. The record intended to be preserved in it
is to be made by the clerk; it then becomes a part of the per-
manent records of the county court clerk's office where all mat-
ters pertaining to, or affecting, title to real estate are kept in
the custody, and under the official supervision of the clerk of
the county court.

The purpose of the law in requiring the delinquent list to
be recorded by the clerk in his office seems to be two-fold:
(1) to preserve in permanent form the evidence of the delin-
quency which is essential to the validity of all tax titles; and
(2) to continue to hold out to the delinquent tax payer notice
of the fact that his land is delinquent. Judge Jackson, of
the Federal Court, held in the case of *Harmon* v. *Steed*,
49 Fed. Rep. 779, that the provision of the statute in rela-
tion to the recordation of the delinquent list was only
directory, and that the failure to record such list in the
clerk's office did not render invalid a tax title. But this,
in our opinion, is not the proper construction. It is not
the interpretation of it given by this Court in the case of *Hogan,*
*Adm'r,* v. *Piggott,* 60 W. Va. 541. That case holds that such
recording is necessary. In the opinion, page 548, POFFEN-
BARGER, Judge, says: "Delinquent lists returned by sheriffs
and relating to state, county and district taxes on real estate
must be recorded by the clerk of the county court 'in a well
bound book to be kept by him for the purpose.' Chapter 30,

section 21, Code. Such a list becomes a part of the 'proceedings of record in the office of the clerk of the county court' ".

The legislature evidently intended to provide for a permanent record of the delinquent list, which should be open to the inspection of the public, and intended it to operate as a continuing notice of the delinquency, to the delinquent tax payer; and he is entitled to this continuing notice until the time expires in which he is given a right to redeem. The legislature certainly did not intend that the mere filing of the delinquent list in the clerk's office should be sufficient notice; but, in addition thereto, required the list to be recorded by the clerk in a well bound book to be kept in his office. The power of an officer to collect taxes by such summary proceedings as a non-judicial sale of land is derived solely from the legislature. It did not exist at common law. This is purely an *ex parte* proceeding, and, notwithstanding all the precautions provided by law may have been taken, still, it is very possible that the land owner may not have had any actual knowledge of the proceedings. The law is therefore so careful regarding the rights of the citizen as to require every essential provision of the statute to be strictly complied with. "In order that a sale of land for taxes should be valid and unimpeachable, and should pass a good title to the purchaser, it is necessary that all the preliminary requirements of the statutes, made conditions to the exercise of the power, and designating the various proceedings which are to culminate in the sale, should have been strictly complied with, and that the officers who execute the power should follow with precision, in so doing, the course marked out for them by law, and that the conditions subsequent to the sale, if any, should be duly observed. And upon this point the authorities are unanimous." Black on Tax Titles, section 155. In support of the text, the author cites numerous authorities. Indeed, we find none to the contrary. The question is, is the recording of the delinquent list one of those essential prerequisite provisions? We think it is, for the reason hereinbefore stated. We therefore hold that the recording of the list of real estate, delinquent for the non-payment of taxes, in the county court clerk's office is an essential prerequisite to the validity of a tax title.

The amended charter of the City of Parkersburg, in force

at the time plaintiff's land was returned delinquent, required
that a copy of the delinquent list should be filed "in the office
of the clerk of the county court of Wood county, and recorded
in a well bound, permanent book, to be furnished by the city
and kept and preserved in said office for that purpose." Who
then was the custodian of this record? The statute makes it
one of the records of the county court clerk's office. It is true
the statute does not expressly say that the record shall be made
by the county clerk, but the statute evidently means that he
shall do so. We do not mean that no one can enter the list in
the book except the clerk, or his deputy; what we mean to say
is that it must be in some way attested by the clerk in order
to make it his record. In the present case it appears that the
clerk's signature, or attestation, does not appear to the list.
There is nothing to identify it as the clerk's record, or as a
record kept by him, or under his supervision and direction. The
only record kept in the book is that entered in it by the city
auditor. This does not make it the county clerk's record. To
constitute a record, "it should be the act of an officer duly
authorized and empowered to act in the premises." 24 A. &
E. E. L. 106; *Coleman's Case,* 25 Grat. 865; 2 Bouvier's Law
Dic. 429; and 23 A. & E. E. L. 457. The filing, by the city
auditor, of the book containing the list of real estate, delin-
quent for the non-payment of city taxes, in the county clerk's
office, which is not attested by the clerk, and not adopted by
him as his act by some note or memorandum of record signed
by him or his deputy, is not a recordation of such delinquent
list by the county clerk.

But is this omission to record the delinquent list in the
county court clerk's office one of the defects in the proceeding
by which the tax title is acquired that are cured by the pro-
visions of section 25, chapter 31, Code? One part of this
section reads as follows: "no irregularity, error or mistake in
the delinquent list, or the return thereof, or in the affidavit
thereto, or in the list of sales filed with the clerk of the county
court, or in the affidavit thereto, or in the recordation of such
list or affidavit, or as to the manner of laying off any real
estate so sold, or in the plat, description or report thereof, made
by the surveyor, or other person, shall, after the deed is made,
invalidate or affect the sale." It will be observed that the

irregularity, error or mistake "in the recordation of such list or affidavit" intended by the statute to be provided against, does not refer to the delinquent list, but only to the list of sales filed with the clerk. The words "such list" here used refer to the list next preceding these words, which is the sales list. If the act had intended to protect a tax title as well against a mistake, or failure, in the recordation of the delinquent list as it does against the irregularity, error or mistake in the recordation of the sales list, it would have used the words "such lists," making it plural instead of singular, as two distinct lists are named in this same clause. Hence, this provision applies only to the irregularity, error or mistake in the recordation of the *sales* list, and does not embrace the failure to record the delinquent list. The last clause of said section seems further to support this view, because it therein more clearly appears that a distinction is drawn between irregularities, errors and mistakes of officers in the tax proceedings occurring before the sale is made, and such irregularities, errors and mistakes occurring after the sale is made. This latter provision of the section is much broader than the one above quoted, in that it provides that not even the "failure" of any officer to perform any act or duty required of him by this chapter to be performed after the sale is made, shall invalidate a tax sale or deed. But there is no provision in the statute saying that the *failure* of an officer to perform any duty required to be performed by him *before* the sale is made shall not operate to defeat a tax sale or deed. The reason for the distinction is clear. The land owner and others interested in seeing that the taxes on it are paid, would not be affected in the same manner by the failure to perform any duty required to be done after the tax sale as they would be by failure of the officer to perform acts required to be done before the sale is made. The performance of none of those acts required by law to be performed by officers before the tax sale is entirely dispensed with. It is only "irregularity," "error" and "mistakes" in the performance of acts to be performed anterior to the sale that the statute was designed to provide against; it does not provide against a total failure to perform any one of them. The failure to record the delinquent list is more than an irregularity, error or mistake in the performance of a duty; it is an utter

failure to perform; it amounts to a vacuity, and is not cured by the statute. *Mosser* v. *Moore*, 56 W. Va. 478. Furthermore, the general statutes relating to the sale of lands for taxes, being summary in their nature, and in derrogation of the rights of the land owner, are subject to the rule of strict construction; and section 25 chapter 31, Code, being designed to cure certain defects in the tax proceedings, is also in derrogation of the land owner's rights and is, therefore, subject to the same rule of strict construction, and we can not construe it to cure irregularities, errors, mistakes and omissions in the performance of any duty required by the general law to be performed by any officer in relation to the tax proceedings, not included in its terms.

The acts to be performed antecedent to the tax sale are in their nature jurisdictional, and are, generally, essential as constituting due process of law; they are, in a sense, analogous to the judicial process, or summons, in proceedings by attachment, or to judicial proceedings *in rem,* the last one of these antecedent acts, intended to give notice to the land owner and others interested in the payment of the taxes, being the public sale of the land at a certain time and place, designated by the law.

The keeping of the "City Delinquent List Book" in the county clerk's office, containing only the entries made therein by the city auditor, and in no way attested by the clerk so as to make it a record of his office, is not simply an "irregularity, error or mistake" in the recordation of the delinquent list in the county court clerk's office. It amounts in law to an absolute failure on the part of the clerk to record the delinquent list in a book to be kept in his office for that purpose; and the failure to perform this duty by the clerk is not cured by any of the provisions of section 25, chapter 31, Code, and such failure to record  is fatal to the validity of the tax deed. The filing of such book in the county clerk's office containing only such entries as are made by the city auditor can amount to no more than a filing of a copy of the delinquent list in the clerk's office; and is in no sense recorded by the clerk.

The validity of a tax title must be determined by the record, and the failure of the record to show the recordation of a delinquent list in the county clerk's office is presumed to have

prejudiced the land owner. *McCallister* v. *Cottrille*, 24 W. Va. 174; *Williamson* v. *Russell*, 18 W. Va. 612; and *Carrell* v. *Mitchell*, 37 W. Va. 130. Nor is this presumption overcome by proof of the fact that a book containing the delinquent list was kept in the clerk's office. The land owner is not affected with notice of anything in such a book. It is no more notice than a deed is notice which is not properly acknowledged, or proven, although admitted to record and entered in the book. He is entitled to be notified by a proper recordation of the list. He is not bound to take any notice of what the city delinquent book contained, until and unless it is properly made the county clerk's record.

The charter of the City of Parkersburg requires the delinquent list to be returned by the city collector "on the first day of June in each year, after he ascertains which of the taxes in the city have not been collected." But this charter provision is subject to the curative provisions of section 25, chapter 31, Code, and the failure to return the delinquent list in time is only an "irregularity" in the return, and is, therefore, one of the defects expressly cured by said section, after deed is made. *Hogan, Adm'r,* v. *Piggott,* 60 W. Va. 632; *Hornage* v. *Imboden,* 57 W. Va. 206; *State* v. *McEldowney,* 54 W. Va. 695.

For the reasons herein stated it was error to deny plaintiff relief and dismiss its bill, and the decree pronounced by the circuit court of Wood county in this cause on the 20th day of March, 1908, will be reversed, and the cause will be remanded with directions to the circuit court to ascertain the amount of money that appellee is entitled to have refunded to him pursuant to the provisions of section 25, chapter 31, Code, and upon the payment to him of such sum by appellant, then to enter a decree cancelling the tax deed.

*Reversed and Remanded.*