# CHARLESTON.

## SHREWSBURY v. HORSE CREEK COAL LAND CO.

### Submitted April 5, 1916. Decided April 18, 1916.

1. TAXATION—*Tax Sale—Persons Entitled to Purchase.*

    S. E. Bradley was deputy for J. D. Price, sheriff of Boone County, during the years 1895 and 1896; as such deputy he aided in making the returns for the real estate returned delinquent for the non-payment of taxes thereon for said years, and in receiving the lists from the auditor of the state, as required by section 4, chapter 31, of the Code; and the real estate in controversy in this cause was returned delinquent for non-payment of taxes for said years, and sold by E. D. Stollings, sheriff of said county, on the 3rd day of January, 1898, at which sale said S. E. Bradley became a joint purchaser of the same. *Held:* That such purchase by Bradley was in violation of section 9, chapter 31 of the Code, and is void. The fact that the purchase was made by Bradley after he had ceased to be a deputy sheriff, does not remove the disability. (p. 187).

2. SAME—*Tax Deeds—Validity.*

    Section 24, chapter 30 of the Code provides: "The sheriff or collector of every county shall, at or before the session of said court at which the county levy is to be laid, present to said court three lists, mentioned in the twenty-first section of this chapter, for examination. The court having become satisfied with the correctness of said lists, or having corrected them if erroneous, shall direct their clerk to certify copies thereof to the auditor. The original lists shall be preserved by the clerk in his office, and the list of real estate delinquent shall be recorded by the clerk in a well bound book to be kept by him for that purpose." "It is essential to the validity of a tax deed that the delinquent list should have been returned to the office of the clerk of the county court, before a sale of the land, and by him recorded in a permanent book to be kept in his office for that purpose, and thereby made a part of the proceedings of record in his office affecting the tax title." *Lumber Co.* v. *Nutter,* 66 W. Va. 444. (p. 188).

3. SAME—*Tax Sales—Irregularities—Cure.*

    The failure to record the delinquent list as required by section 24, chapter 30 of the Code, is more than an irregularity, error or mistake in the performance of a duty; it is a failure to perform a duty required by law, and is not cured by section 25, chapter 31 of the Code. (p. 189).

4. SAME—*Tax Titles—Deed—Conformity to Tax Sale.*

A tax deed must conform to the sale made by the sheriff of the county, and a deed made by a county clerk, purporting to convey a certain parcel of the whole by metes and bounds, where the sale made by the sheriff was an undivided interest, is void. (p. 191).

5. SAME—*Forfitures—Non-entry of Taxes.*

J. C. Alderson and R. C. McClaugherty owned jointly two parcels of land; the land was returned delinquent for non-payment of the taxes thereon for the years 1895 and 1896. In 1898, Alderson's interest in the land was sold by the sheriff of the county. This sale was illegal, but Alderson's interest was conveyed to the purchasers at the tax sale by the clerk of the county court. The land was assessed and the taxes paid up to and including the year 1898, in the names of Alderson and McClaugherty. For the years 1899 and 1900, the portions of the land sold as the interest of Alderson were assessed as separate parcels, in the names of the purchasers at the tax sale, and the residue of both tracts was assessed and taxes paid in the name of McClaugherty. In 1901, the purchasers at the tax sale and McClaugherty, by separate deeds, conveyed the land to J. R. Wingfield, Trustee, who placed both of said tracts on the land books in his name. In 1902, the two tracts were combined and placed on the land books, and assessed and taxes paid on both tracts as an entire tract. The lands were not off the land books for five successive years, and were not forfeited for non-entry. (p. 194).

6. SAME—*Tax Titles—Proceedings to Try.*

Under the circumstances of this case, there was not such delay in the institution of the suit as would estop the plaintiff from prosecuting the same. (p. 195).

(MILLER, JUDGE, absent.)

Appeal from Circuit Court, Boone County.

Suit by George H. Shrewsbury, trustee, against the Horse Creek Coal Land Company and others. From a decree for defendants, plaintiff appeals.

*Reversed and remanded, with directions.*

*George P. Alderson* and *Linn & Byrne* and *Frank P. Murphy,* for appellant.

*Watts & Watts* and *Murray Briggs,* for appellees.

MASON, JUDGE:

J. C. Alderson and R. C. McClaugherty, on the 3rd day of January, 1898, and for many years previous thereto, were the owners in fee simple of two certain tracts of land, situated on Horse Creek, in Boone County, West Virginia, one containing 650 acres and the other 616¼ acres, the said Alderson owning an undivided two-thirds interest and the said Mc Claugherty owning an undivided one-third interest therein. These tracts of land had been regularly assessed on the land books of Boone County in the name of McClaugherty and Alderson, and for the years 1895 and 1896 were returned delinquent in the name of McClaugherty and Alderson for the non-payment of the taxes thereon; and afterwards the said McClaugherty paid one-third of the taxes for said years. On the 3rd day of January, 1898, E. D. Stollings, sheriff of Boone County, sold for the taxes thereon for the years 1895 and 1896 parts of both said two tracts, said to be the undivided two-thirds interest of the said J. C. Alderson in the said two tracts of land, to F. C. Leftwich and S. E. Bradley, who had J. W. Massey, Surveyor of Boone County, go upon the said two tracts of land and partition the said land between the said McClaugherty and the said Leftwich and Bradley. The said surveyor cut off to McClaugherty the undivided interest claimed to have been redeemed by him, and set off to Leftwich and Bradley the undivided two-thirds purchased by them at said sale, in each of said two tracts of land. As will be hereafter noted, there is a contention whether there was a partition, or only a part set off to be sold instead of selling the whole. On the 28th day of February, 1899, J. M. Hopkins, clerk of the County Court of Boone County, conveyed to the said F. C. Leftwich and S. E. Bradley parcels of both tracts, purporting to be the undivided two-thirds interest of J. C. Alderson purchased by them at a tax sale, in the 650 acres and 616¼ acres returned delinquent in the name of McClaugherty and Alderson for the non-payment of the taxes thereon for the years 1895 and 1896, and set off to the said Leftwich and Bradley by J. W. Massey, surveyor.

By a deed dated the 19th day of April, 1901, F. C. Leftwich and S. E. Bradley, and their wives, conveyed with spec-

ial warranty to J. R. Wingfield, trustee, the land conveyed
to them as aforesaid.   On the 25th day of April, 1901, the said
R. C. McClaugherty conveyed with special warranty to the
said J. R. Wingfield, trustee, one-third interest in said two
tracts of land.   On the 21st day of June, 1904, J. R. Wing-
field, trustee, and others, conveyed to the defendant, the
Horse Creek Coal Land Company, a corporation, the whole
of the two tracts of land conveyed to him by F. C. Leftwich,
S. E. Bradley, and R. C. McClaugherty, together with various
other tracts.   For the years 1895 to 1898, inclusive, the two
tracts of land were assessed on the land books of Boone Coun-
ty in the joint names of McClaugherty and Alderson as 650
acres and 616¼ acres, respectively; for the years 1899 and
1900, R. C. McClaugherty was charged with 218⅔ and 205⅓
acres, and Leftwich and Bradley with 433⅓ and 410 acres
for each year, the parcels assigned to them by County Sur-
veyor Massey; for the year 1901, said two tracts were assessed
in the name of J. R. Wingfield, trustee, as 615 and 652 acres,
respectively; and for the years 1902 and 1903, said two tracts
were united under one charge to J. R. Wingfield, trustee, as
1267 acres, since which time the land has been charged to
said Wingfield, trustee, and the Horse Creek Coal Land Com-
pany, as part of a large boundary.

S. E. Bradley was deputy sheriff for J. D. Price, sheriff,
for the years 1895 and 1896, and the delinquent returns are
in the handwriting of said Bradley; the returns were made
out by him, though signed by J. D. Price.   There was no well
bound book nor any other book kept by the clerk of the Coun-
ty Court of Boone County for the recordation of delinquent
lists returned by the sheriff prior to July, 1901.   On the 5th
of September, 1899, J. C. Alderson was adjudged a bankrupt
by the District Court of the United States for the District of
West Virginia, at Charleston.   On the 5th day of December,
1903, George H. Shrewsbury was appointed as trustee for
said bankrupt, by said court.

In January, 1909, the plaintiff as trustee instituted two
chancery suits against the Horse Creek Coal Land Company
and others, and filed his two bills of complaint, and his two
amended bills of complaint, praying that he be permitted to

pay to the said Horse Creek Coal Land Company, or to the court for it, the amount necessary to redeem the two-thirds interest of the said J. C. Alderson in said land, and that the cloud upon the title thereto may be removed by a decree of the court, cancelling and annulling the several deeds aforesaid as far as they relate to or purport to convey any interest in or part of the said land, or the interest owned as aforesaid by the said J. C. Alderson at the time of the sale by the sheriff, and at the date of the adjudication in bankruptcy of the said Alderson, and that he have such other and further relief as the court may see fit to grant. In these bills the following grounds were assigned for having the deeds annulled, and permission granted to be allowed to redeem said lands:

First: That the delinquent lists for the years 1895 and 1896, upon which said deeds were based, were never recorded in a well bound book or any other book in the county of Boone prior to the year 1901, thus rendering the deeds void.

Second: That S. E. Bradley, one of the tax sale purchasers of the said two tracts of land, was deputy for J. D. Price, the sheriff who made the delinquent return, and made out the lists of delinquent lands to be returned and was disqualified from buying, and the deed to him and his co-purchaser was rendered absolutely void.

Third: That there was no authority in the sheriff to make sale of the undivided interests of J. C. Alderson; no authority in the surveyor of Boone County to make the partition assumed to be made between the purchasers of J. C. Alderson's undivided two-thirds interest, and R. C. McClaugherty, the owner of the other one-third interest; and no authority in the clerk of the County Court of Boone County to convey a segregated portion of an undivided tract to the tax purchasers under a sale of undivided interest; and that such sale, partition, and deed are severally and collectively void and of no effect.

The defendants and appellees filed their demurrers to the said two bills and amended bills of complaint, which demurrers were overruled, and the defendants thereupon filed their two answers to the two bills and amended bills of complaint, admitting that on the 3rd day of January, 1898, and for a

long time prior thereto, J. C. Alderson and R. C. McClaugherty were the owners in fee of 650 acre and 616¼ acre tracts and were jointly charged with the same on the land books for the years 1895 and 1896, and that both tracts were returned delinquent for the non-payment of the taxes thereon for those years, and that the Horse Creek Coal Land Company was the owner of 240 acres residue of the 650 acre tract, and of the 240 acres residue of the 616¼ acre tract, and alleges that it is now the owner of both of said tracts except whatever interest J. B. Trees has in the oil and gas, and that J. C. Alderson has lost all his rights by reason of the fact that he failed to keep his interest on the land books after said deeds, and further alleges that the sale of the two-thirds interest was a sale of two-thirds of the land, and denies all of the plaintiff's allegations other than those admitted. The said two chancery causes were consolidated and heard together.

On the 18th day of January, 1915, an order was entered in the Circuit Court of Boone County adjudging the land described and conveyed by said two tax deeds as forfeited by reason of the failure of the former owners to enter the said land on the land books for five successive years after the recording of the said tax deeds, and the suits were dismissed, but without prejudice to the former owners to redeem said land by proper proceedings.

This record presents several important questions:

First: S. E. Bradley having been a deputy sheriff of the county at the time the two tracts of land were returned delinquent, and his principal, the sheriff, having returned the land delinquent, and having made out the lists of the delinquent lands of the county for the years 1895 and 1896, when the said two tracts of land were returned delinquent for the non-payment of the taxes thereon, was he, the deputy, disqualified from buying said land at a sale made by the sheriff who was the successor in office to the principal of said Bradley, after he had gone out of office? Section 9 of chapter 31 of the Code of West Virginia provides: "No sheriff, deputy sheriff, collector or other officer, who shall return any real estate delinquent for the non-payment of the taxes thereon, or who shall receive a list thereof under the provisions of the fourth

section of this chapter, or who shall sell by himself, his deputy or agent, or who shall be the deputy of any officer making such 'sale, shall directly or indirectly purchase any real estate so sold, or be in any way directly or indirectly interested with any other person in such purchase. Every person violating this section shall forfeit one hundred dollars for each offense, and the sale shall be absolutely void, and the title of the real estate sold shall remain in the person in whose name the same was sold.''

There would seem to be no question as to the fact that a person who was the deputy of the sheriff who returned any real estate delinquent for the non-payment of the taxes thereon or who received a list thereof from the auditor as required by section 4 of chapter 31 of the Code, is disqualified from becoming a purchaser of the lands so returned delinquent. The disability is not removed by the retirement of the sheriff or his deputy from office. The purpose of the statute is to remove from these offices the temptation of improperly returning lands delinquent for the non-payment of taxes with a view of becoming purchasers. If the law were otherwise, great opportunities would be presented to sheriffs and other tax collectors to perpetrate fraud on tax payers, and to increase delinquent land lists instead of collecting taxes. We are of opinion that the purchase made by Bradley is absolutely void, and the title to said lands remained in said Alderson and McClaugherty.

Second: Appellant insists that the tax deed is void because the lists of the real estate returned delinquent for the years 1895 and 1896 were not recorded in the office of the clerk of the county court. Section 24, chapter 30 of the Code, provides: ''The sheriff or collector of every county shall, at or before the session of said court at which the county levy is to be laid, present to said court three lists, mentioned in the twenty-first section of this chapter, for examination. The court having become satisfied of the correctness of said lists, or having corrected them if erroneous, shall direct their clerk to certify copies thereof to the auditor. The original lists shall be preserved by the clerk in his office, and the list of real estate delinquent shall be recorded by the clerk in a well

bound book to be kept by him for that purpose.'' The proof is clear that these lists were not recorded as required by law. In fact the proof shows that no such book was kept by the clerk of the County Court of Boone County until the year 1901. These lists were filed with the clerk of the county court, but not recorded. Is it essential to the validity of a tax deed that the list of delinquent real estate should be recorded in the county clerk's office? This question was very fully discussed in a recent case in this court; *Lumber Co.* v. *Nutter*, 66 W. Va. 444. In that case this court held: ''It is essential to the validity of a tax deed that the delinquent list should have been returned to the office of the clerk of the county court, before a sale of the land, and by him recorded in a permanent book to be kept in his office for that purpose, and thereby made a part of the proceedings of record in his office affecting the tax title.'' We renew our opinion that this is a proper construction of that part of section 24, chapter 30 of the Code. The recording of these lists is a prerequisite to the validity of a tax title.

But is this omission to record the delinquent list one of the defects in the proceeding by which the tax title is acquired that are cured by section 25, chapter 31 of the Code, one part of which reads as follows: ''no irregularity, error or mistake in the delinquent list, or return thereof, or in the affidavit thereto, or in the lists of sales filed with the clerk of the county court, or in the affidavit thereto, or in the recordation of such list or affidavit, or as to the manner of laying off any real estate so sold, or in the plat, description or report thereof, made by the surveyor, or other person, shall, after the deed is made, invalidate or affect the sale?'' ''It will be observed that the irregularity, error or mistake 'in the recordation of such list or affidavit' intended by the statute to be provided against, does not refer to the delinquent list, but only to the list of sales filed with the clerk. The words 'such list' here used refer to the list next preceding these words, which is the sales list. If the act had intended to protect a tax title as well against a mistake, or failure, in the recordation of the delinquent list as it does against the irregularity, error or mistake in the recordation of the sales list, it would have used

the words 'such lists,' making it plural instead of singular, as two distinct lists are named in this same clause. Hence, this provision applies only to the irregularity, error or mistake in the recordation of the *sales* list, and does not embrace the failure to record the delinquent list. The last clause of said section seems further to support this view, because it therein more clearly appears that a distinction is drawn between irregularities, errors, and mistakes of officers in the tax proceedings occurring before the sale is made, and such irregularities, errors or mistakes occurring after the sale is made. This latter provision of the section is much broader than the one above quoted, in that it provides that not even the 'failure' of any officer to perform any act or duty required of him by this chapter to be performed after the sale is made, shall invalidate a tax sale or deed. But there is no provision in the statute saying that the *failure* of an officer to perform any duty required to be performed by him *before* the sale is made shall not operate to defeat a tax sale or deed. The reason for the distinction is clear. The land owner and others interested in seeing that taxes on it are paid, would not be affected in the same manner by the failure to perform any duty required to be done after the tax sale as they would be by failure of the officer to perform acts required to be done before the sale is made. The performance of none of those acts required by law to be performed by officers before the tax sale is entirely dispensed with. It is only 'irregularity,' 'error' and 'mistake' in the performance of those acts to be performed anterior to the sale that the statute was designed to provide against; it does not provide against a total failure to perform any one of them. The failure to record the delinquent list is more than an irregularity, error or mistake in the performance of a duty; it is an utter failure to perform; it amounts to a vacuity, and is not cured by the statute. *Mosser* v. *Moore,* 56 W. Va. 478. Furthermore, the general statutes relating to the sale of lands for taxes, being summary in their nature, and in derogation of the rights of the land owner, are subject to the rule of strict construction; and section 25, chapter 31, Code, being designed to cure certain defects in the tax proceedings, is also in derogation of the land owner's

rights and is, therefore, subject to the same rule of strict construction, and we can not construe it to cure irregularities, errors, mistakes and omissions in the performance of any duty required by the general law to be performed by any officer in relation to tax proceedings, not included in its terms." *Lumber Co.* v. *Nutter, supra.*

Third: The appellant claims that an undivided two-thirds interest in said land was returned delinquent and sold; that while the assessments for the said years of 1895 and 1896 were made against both tracts as a whole, McClaugherty owned an undivided one-third interest in the lands, and that he was permitted to pay one-third of the taxes thereon, and that Alderson's interest, being two-thirds, was returned delinquent and sold. If this be true, this was error. "A tax deed purporting on its face to convey an undivided interest in land other than a town lot, is unauthorized by law, inoperative and not conclusive as to any one. It does not estop the State under Code 1913, ch. 31, sec. 29." *Caretta Railway Co.* v. *Fisher*, 74 W. Va. 115.

The assessments, so far as appears, for the years 1895 and 1896 were valid. They were against lands owned jointly by Alderson and McClaugherty. One-third of the taxes on both tracts for the years 1895 and 1896 were paid by McClaugherty after the lands were returned delinquent. Alderson owned an undivided two-thirds interest in the lands and paid no part of the taxes for the years 1895 and 1896. This left two-thirds of the taxes for these two years unpaid. There are memoranda on the delinquent lists for the years 1895 and 1896 indicating that McClaugherty paid one-third of the taxes for both years. E. D. Stollings, sheriff of Boone County, made sale of these lands. His report of sale shows that the lands were sold January 3, 1898, for non-payment of the taxes charged thereon for the years 1895 and 1896, in the name of McClaugherty and Alderson, that the whole amount of taxes, interest, commissions, and costs due on the 616¼ acre tract was $36.01, and the whole amount of taxes, interest, commissions, and costs on the 650 acre tract was $36.63, and that the quantity of land sold in both tracts was "Alder-

son's ⅔ interest,'' and that F. C. Leftwich and S. E. Bradley
were the purchasers and paid the purchase money.

Thereupon Leftwich and Bradley procured J. W. Mas-
sey, the surveyor of Boone County, to lay off the two-thirds
of the said lands to them. The surveyor's report shows that
the survey was made at the request and expense of Leftwich
and Bradley. It recites that the sale was advertised as direct-
ed by law, that the said Leftwich and Bradley. became the
purchasers of an undivided interest in the lands, ''being the
undivided two-thirds of a tract of land on the assessor's land
books of Boone County in the names of McClaugherty and
Alderson,'' and that ''said two-thirds interest· in said tract
of land was the undivided interest of J. C. Alderson therein
and was sold by E. D. Stollings, sheriff of Boone County on
said 3rd day of January, 1898, for the non-payment of the
taxes due on said two-thirds interest.'' This report further
says that at the instance of said Leftwich and Bradley, he
(the surveyor) went upon the said land and surveyed and
laid off two-thirds thereof to the said Leftwich and Bradley
*  *  *  which said division is, in the opinion of the sur-
veyor, a just and fair division of said land as between the
said F. C. Leftwich and S. E. Bradley of the one part, and R.
C. McClaugherty, the owner of the other one-third interest in
said tract of land. The parcel so set off is then described by
metes and bounds. A similar report was made with regard
to the other tract. These reports were made on the 25th day
of February, 1898.

On the 28th day of February, 1898, J. M. Hopkins, clerk
of the County Court of Boone County, by two separate deeds,
in which is recited the sale of said real estate charged with
taxes in said county and returned delinquent therein for non-
payment of taxes, and that at the said sale F. C. Leftwich
and·S. E. Bradley became the purchasers of the one undivid-
ed two-thirds part of the land charged with the taxes in the
names of McClaugherty and Alderson for the years 1895 and
1896, that ''the undivided two-thirds part of said tracts of
land purchased by F. C. Leftwich and S. E. Bradley as afore-
said being the entire interest of J. C. Alderson therein,'' and
that ''F. C. Leftwich and S. E. Bradley caused a survey and

plat and description of the real estate so purchased to be made and filed with the clerk of the county court as required by law.'' The deeds then grant "all the real estate so purchased," describing in each deed the boundaries as laid off by the county surveyor, set off to the said Leftwich and Bradley. These deeds were accepted by Leftwich and Bradley, and placed upon record, and the lands assessed to them for the years 1899 and 1900. The other portions of said two tracts were assessed to McClaugherty for the years 1899 and 1900.

On the 19th day of April, 1901, Leftwich and Bradley conveyed to J. R. Wingfield, trustee, both said parcels conveyed to them by the clerk of the County Court of Boone County, by the metes and bounds contained in the said deeds. On the 25th day of April, 1901, McClaugherty and wife conveyed to Wingfield, trustee, all the one-third interest in both said tracts of land, describing both tracts by metes and bounds, and adding: "The interest of R. C. McClaugherty in the said two tracts of land being supposed to be four hundred and twenty-five acres.''

The following agreement of facts was made and entered of record: "Agreed Statement of Facts No. 1. That the two tracts of land which were entered on the land books of Boone County, West Virginia, and assessed with taxes in Scott District of said County as 650 acres on Horse Creek and 616¼ acres on Rattle Snake Fork of Horse Creek for the years 1895, 1896, 1897, and 1898 in the joint names of McClaugherty and Alderson, were not after the said year of 1898, entered on the said land books in the name of said McClaugherty and Alderson, but for the years 1899 and 1900 said two tracts of land were entered on said land books and charged with taxes in said county and district as follows: McClaugherty, R. C. 218⅔ acres; Leftwich & Bradley 433⅓ acres. McClaugherty, R. C. 205⅓ acres; Leftwich & Bradley, 410 acres.

"And that for the year 1901, the said two tracts of land were entered and charged with taxes for all purposes, on said land books in said district, as follows: Wingfield, J. R., Trustee, 615 acres, and Wingfield, J. R., Trustee, 652 acres.

"And that for the years 1902 and 1903, the said two tracts

of land were united under one charge and entered on the said land books in the said district and assessed with taxes for all purposes as 1267 acres in the name of J. R. Wingfield, Trustee.''

Under the foregoing statement of facts proven, we must hold that the sheriff sold to Leftwich and Bradley an undivided interest in said two parcels of land. The sheriff had no right to do this, and his act is void. It is the duty of the clerk of the county court to convey the land sold by the sheriff. As we have seen, an undivided interest was sold by the sheriff, and a conveyance of the specific part of the land by metes and bounds is quite a different thing. Such a deed made by the clerk of the county court is unauthorized and void.

Counsel for the Horse Creek Coal Land Company insist that the said two parcels of land were off the land books for five years, and were forfeited. It is true that the land was not placed on the assessor's books in the names of Alderson and McClaugherty after the year 1898. The sale was made in 1898. In 1899 the deeds were made by the county court clerk to Leftwich and Bradley for two-thirds interest in each of the two tracts, to-wit: for 433⅓ acres, and 410 acres. Leftwich and Bradley were assessed with the same for the years 1899 and 1900; and for the same years McClaugherty was assessed with 218⅔ acres, and 205⅓ acres; thus assessing the whole of both tracts in the four parcels.

As we have seen, there was no legal partition of these lands, and the assessment of the two small parcels in the name of McClaugherty, who was the co-tenant of Alderson, would not have kept the whole of both tracts from forfeiture. But the lands were not off the assessor's books under this rule, except for the years 1899 and 1900. In the year 1901, both tracts were put back on the assessor's books in the name of Wingfield, trustee. After this the two parcels were consolidated, and assessed as one tract. All the land was on the assessor's books; the assessment made against it; and the taxes paid; and that is all that is required to prevent a forfeiture. When Wingfield bought the McClaugherty interest, he became a tenant in common with Alderson, and it became

his duty to prevent the lands from forfeiture to place all the lands on the land books for assessment, which he did. The land having been placed on the land books as a whole by one of the joint tenants, and assessed and the taxes paid, saves it from forfeiture. *Brewing Co.* v. *St. Clair*, 46 W. Va. 93; *Boggess* v. *Scott*, 48 W. Va. 316; *Lefever* v. *Thomas*, 69 W. Va. 88.

We do not think there was any such delay in the institution of these suits as would bar the plaintiff. The defendant Wingfield bought McClaugherty's interest in April, 1901, and thereby became a tenant in common with Alderson. Alderson was adjudged a bankrupt by the District Court of the United States, September 5, 1899. These lands were sold and conveyed before that time. Alderson in his deposition says he did not find out the lands were sold for taxes until, he thinks, in 1905; that he had arranged with Judge McClaugherty to pay the taxes. He seems to have been misled in this way. In the meantime his property was in the hands of his trustee in bankruptcy. There was no effort on the part of Wingfield or the Horse Creek Coal Land Company to take actual adverse possession of the lands, except as a part of a large parcel including several thousand acres. The sale of the lands by the sheriff for non-payment of taxes, and deeds thereof executed by the clerk of the county court were all matters of record, and Wingfield is charged with knowledge of the condition of the title. These records showed that the sale and conveyance were illegal, and passed no title to Leftwich and Bradley.

We reverse the decree, and remand the cause to the circuit court of Boone County, with direction that the plaintiff be permitted to redeem said two parcels of land sold for non-payment of taxes due thereon, and to cancel the deeds made by the clerk of the County Court of Boone County to F. C. Leftwich and S. E. Bradley, dated the 28th day of February, 1899, and the deeds of said Leftwich and Bradley to J. R. Wingfield, trustee, dated April 19, 1901, and the deed of J. R. Wingfield, trustee, to the Horse Creek Coal Land Company, dated the 21st of June, 1904, so far as said deed conveys the interest of said J. C. Alderson in said two tracts of

land, and the lease of the Horse Creek Coal Land Company to Jos. C. Trees, dated August 11, 1908, in so far as said lease conveys any interest of said Alderson in said lands; but the plaintiff shall pay to the parties entitled thereto all the costs and expenses of the said tax sale, including the sum required by law to redeem the said real estate.

*Reversed and remanded, with directions.*