## HORSE CREEK COAL LAND CO. v. ALDERSON et al.

(Circuit Court of Appeals, Fourth Circuit.     April 16, 1920.)

### No. 1717.

**Judgment** ☞743(2)—**Conclusive as to issues which should have been raised by defendant.**

A judgment of the Supreme Court of Appeals of West Virginia, which finally determined title to a tract of land *held* conclusive as between the parties and to preclude the defendant therein from afterward asserting title to a part of the land based upon a prior decree of a federal court, which it did not plead in the state suit, but which was available to it as a defense as to the part of the land to which it related.

Appeal from the District Court of the United States for the Southern District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Suit in equity by the Horse Creek Coal Land Company against George P. Alderson and others. Decree for defendants, and complainant appeals. Affirmed.

This is a suit instituted in the District Court of the United States for the Southern District of West Virginia, by the appellant, the Horse Creek Coal Land Company, as a privy in interest and estate of A. P. Levassor, executor and trustee, for the purpose of carrying into execution a former decree of the Circuit Court of the United States for the Southern District of West Virginia, rendered in 1901, in favor of said A. P. Levassor, executor and trustee, against William Thompson, commissioner of school lands for Boone county, W. Va., J. C. Alderson, and others, predecessors in title of the appellee, George P. Alderson, by which it is insisted by appellant that Levassor's right and title to a certain parcel of land, part of which is here involved, was settled and established, and to which title and interest appellant thereafter succeeded.

The salient points appearing in the record may be epitomized as follows: It appears that in October, 1885, William Thompson, commissioner of school lands of Boone county, W. Va., instituted proceedings in the circuit court of Boone county against certain lands as waste and unappropriated, in order to effect a sale thereof for the benefit of the school fund. During the pendency of that suit and in the month of April, 1889, A. P. Levassor, executor of the estate of Eugene Levassor, deceased, filed his petition in said suit, alleging that certain lands already sold by the commissioner in that proceeding were the property of said petitioner, being a portion of a tract which had been redeemed by him by proceedings instituted in an adjoining county, wherein the major portion of said tract was situate, and asking that said sales be annulled in so far as the same affect the portion of said land so claimed by him.

The court entered a decree denying the prayer of the petition, from which decree said Levassor did not apply for an appeal, as he had the right to do, but on the 17th day of September, 1890, filed his bill in the Circuit Court of the United States for the District of West Virginia, against the commissioner of school lands and certain persons alleged to have purchased portions of the lands so claimed by him, seeking to vacate the decrees, sales, and proceedings so far as they affected the lands claimed by him, and to enjoin all further proceedings by the commissioner of school lands, and to enjoin such purchasers from taking possession of, or from exercising acts of ownership over, the lands in question, etc. Nothing appears to have been done in the case until December 12, 1893, when Levassor filed an amended and supplemental bill, showing that on January 24, 1892, the commissioner of school lands had conveyed to J. C. Alderson and R. C. McClaugherty certain of the lands so sold by the commissioner of school lands as aforesaid and claimed by Le-

vassor, and making J. C. Alderson a party to the suit. The Levassor suit lay dormant from December 12, 1893, until July 20, 1901. In the meantime, on September 5, 1899, the said J. C. Alderson was adjudicated a bankrupt, and on October 12, 1899, John A. Preston was appointed trustee for such bankrupt. On February 28, 1899, J. M. Hopkins, clerk of the county court of Boone county, conveyed to F. C. Leftwich and S. E. Bradley the undivided two-thirds interest of J. C. Alderson in two tracts of 650 and 616¼ acres, respectively, purchased at a tax sale made by E. D. Stollings, sheriff of Boone county, in the name of said Alderson, for taxes delinquent in his name for the years 1895 and 1896. By deed dated April 19, 1901, said Leftwich and Bradley conveyed the Alderson land, being an undivided two-thirds interest in the two tracts, to J. R. Wingfield, trustee, and by deed dated April 25, 1901, R. C. McClaugherty conveyed his undivided one-third interest in the land to said Wingfield, trustee, and for the year 1901 said two tracts are charged on the land books of Boone county for taxation in the name of Wingfield, trustee.

On July 20, 1901, 11 years after the institution of the suit, and 8 years after the last preceding step taken therein, a decree was entered in the Levassor suit, setting forth that "all matters in controversy in this cause between the plaintiff and the defendant, R. C. McClaugherty, and William A. Breedlove, having been settled and adjusted, on motion of the plaintiff this cause is dismissed as to said McClaugherty and William Breedlove." This decree proceeds to enjoin the commissioner of school lands and his successors in office, and J. C. Alderson and others, from taking any further steps in the school land proceeding so far as it concerns the tract of 692 acres set out in the bill and exhibits, and then declares that the deed of January 24, 1892, from William Thompson, commissioner of school lands, to R. C. McClaugherty and J. C. Alderson, in so far as it conveys or attempts to convey that part or portion of the lands claimed by Levassor to J. C. Alderson or his vendors, are to that extent set aside and annulled, "and, there being nothing further to be done in this cause, it is ordered that the same be retired from the docket." On November 21, 1901, Wingfield, trustee, in order to protect his title derived through Alderson and McClaugherty, purchased from W. L. Ashby, who had acquired the Levassor title, all his right, title, and interest to the Levassor land, in which was included the interlock in question, comprising approximately 236 acres. By deed Ashby, for the consideration of $300, quitclaims his interest in eight tracts, aggregating 4,121.5 acres, including the 844.5 acres conveyed to Wingfield by Leftwich and Bradley, and the 426 acres conveyed to Wingfield by McClaugherty.

At February rules, 1909, George H. Shrewsbury, trustee in bankruptcy for J. C. Alderson, filed his bills of complaint against Horse Creek Coal Land Company and others, and at March rules filed his amended bill against the same defendant, alleging that the tax deeds from Hopkins, clerk of the county court, to Leftwich and Bradley, and the sale in pursuance of which said deeds were made, were void for various reasons, and praying that he be permitted to redeem the two tracts of land therein described. The two bills are practically identical, and were consolidated and proceeded with as one suit.

The first bill alleges that on January 3, 1898, and for a long time before that date, said J. C. Alderson and R. C. McClaugherty were the owners in fee of a tract of 616¼ acres of land, situate on Horse creek, or the branches thereof, in Boone county; the said Alderson being the owner of an undivided two-thirds, and the said McClaugherty the owner of the remaining undivided one-third. The second bill contains the same averment with respect to the tract of 650 acres.

Horse Creek Coal Land Company filed its answer to the bill relating to the 650 acres, in which, among other things, it states: "Further answering this defendant says it is true that on the 3d day of January, 1898, and for a long time prior thereto, one J. C. Alderson and one R. C. McClaugherty were the owners in fee of a tract of 650 acres of land, situated on the waters of Horse creek, in Boone county, W. Va.; and this defendant says that said McClaugherty and Alderson, as such owners, were jointly charged with the taxes on said tract of land in said county for the years 1895 and 1896."

The answer then proceeds to aver and vouch for the validity of the sale and deed made for the failure to pay the taxes for those years, and to defend its title acquired under said deed. It avers that "by deed dated April 19, 1901, said Bradley and Leftwich, and their respective wives, conveyed the said tract of 410¾ acres of land to J. R. Wingfield, trustee, who afterwards, as trustee and in his own right, together with * * * conveyed the said tract of land to this defendant, the Horse Creek Coal Land Company, and that it is now the owner of said tract of land, subject only to the rights of the defendant, Joseph C. Trees, under a certain oil and gas lease, bearing date August 11, 1908. And this defendant says that for a period of more than five years next before the institution of the suit, the said Horse Creek Coal Land Company and its predecessors in title have been in actual, continuous, and exclusive possession of said tract of 410¾ acres, claiming the same under the deed aforesaid as part of a larger boundary of land made up of contiguous tracts, and have been, during said period of more than five years, assessed with state, county, and district taxes on said tract of 410¾ acres, and have paid the taxes thereon for each and all said years for all purposes, and that whatever title the said Alderson and McClaugherty, or either of them, had in said 410¾ acres, the same passed to and became vested in the said Bradley and Leftwich by virtue of the tax sale and deed in pursuance thereof, and is now, by virtue of the subsequent conveyance hereinbefore mentioned, vested in the Horse Creek Coal Land Company, and this defendant denies that said sale and purchase and the tax deed to said Bradley and Leftwich were or are void for or on account of any matter or thing alleged in said bills."

On this state of the pleadings, and upon the evidence adduced, the Supreme Court of Appeals of West Virginia rendered its decision, in Shrewsbury v. Horse Creek Coal Land Co., 78 W. Va. 182, 88 S. E. 1052, holding that the tax deed and deeds made in pursuance thereof are invalid; that the forfeiture pleaded by the defendant (Horse Creek Coal Land Company) had not accrued (syllabus 5), holding that "the lands were not off the land books for five successive years, and were not forfeited for nonentry." Accordingly the mandate of the Supreme Court, dated April 18, 1916, holds that Shrewsbury, trustee, was entitled to redeem the two parcels of land.

After this final adjudication by the Supreme Court of Appeals of West Virginia, George P. Alderson, who had purchased the real estate in question from Shrewsbury, trustee in bankruptcy, filed his bill at February rules in the circuit court of Boone county, against Horse Creek Coal Land Company, a corporation, and others, for partition of the two tracts of land of the undivided two-thirds interest in which he had been adjudicated the owner and for an accounting for waste. In that instance it was alleged, as in the original case, "that on the 3d day of January, 1898, and for a long time before that date, the said J. C. Alderson and one R. C. McClaugherty were the owners in fee of two tracts of land, one containing 616¼ acres and the other containing 650 acres, situate on Horse creek and the branches thereof, in Boone county, W. Va., the said J. C. Alderson being the owner of two-thirds of each of said two tracts, and the said McClaugherty being the owner of the remaining one-third." It was also alleged that since the decree of the Supreme Court in the Shrewsbury Case, the existence of the Ashby deed to Wingfield, trustee, of the 21st day of November, 1901, purporting to grant the Levassor title, had been brought to plaintiff's (George P. Alderson) attention. The bill avers that Horse Creek Coal Land Company is estopped from now setting up such title by reason of failure to plead the same in the original suit, but asks that, if such estoppel be not sustained, such acquisition of the Levassor title by his cotenant be held to inure to his benefit, and that he be permitted to pay his proportionate amount of the cost thereof.

The Supreme Court of West Virginia decided that the Horse Creek Coal Land Company was estopped from setting up the Levassor title against the cotenancy. 81 W. Va. 411.[1] On the 8th day of April, 1918, Horse Creek Coal Land Company filed its bill against George P. Alderson and others in the District Court of the United States for the Southern District of West Virginia, now before this court. On the 23d day of July, 1918, George P. Alderson appeared and filed his motion to dismiss the bill, on the ground that the

[1] 94 S. E. 716.

matters therein alleged had already been adjudicated as between the parties, and that appellant cannot by the medium of a new suit have a rehearing of the matters decided, and a nullification of the decision of the Supreme Court of Appeals of West Virginia. The District Court entered an order sustaining the motion to dismiss the bill, and the cause is now before this court upon an appeal from that decree.

L. H. Kelly, of Gassaway, W. Va. (J. Blackburn Watts, of Charleston, W. Va., on the brief), for appellant.

W. E. R. Byrne, of Charleston, W. Va., and Frank P. Murphy, of Madison, W. Va. (Murphy & Wade, of Madison, W. Va., on the brief), for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). The facts of this case are numerous and more or less complicated. A consideration of the same has involved much study and investigation on the part of the court. However, in the last analysis, the case, in our opinion, turns on one point, to wit, as to whether the appellant is precluded by the judgment of the Supreme Court of West Virginia, in the case of Shrewsbury, Trustee, v. Horse Creek Coal Land Co., 78 W. Va. 182, 88 S. E. 1052, wherein it was held that:

"J. C. Alderson and R. C. McClaugherty, on the 3d day of January, 1898, and for many years previous thereto, were the owners in fee simple of two certain tracts of land, situated on Horse creek, in Boone county, W. Va., one containing 650 acres, and the other 616¼ acres; the said Alderson owning an undivided two-thirds interest, and the said McClaugherty owning an undivided one-third interest, therein."

In that case appellant failed to avail itself of the opportunity to plead in bar the decree of the Circuit Court of the United States for the Southern District of West Virginia, rendered on the 20th day of July, 1901, in the case of A. P. Levassor, executor and trustee, against William Thompson, commissioner of school lands for Boone county, W. Va., J. C. Alderson, and others, being the decree upon which appellant now bases its present suit, and upon which it relies to recover. Therefore the question now presented is as to whether the appellant is not now estopped from setting the same up as a means of defeating the appellees.

After the decision of the Supreme Court of Appeals of West Virginia, Alderson, the purchaser of the real estate in question from Shrewsbury, trustee in bankruptcy, filed his bill in the circuit court of Boone county against the appellant and others, for partition of the two tracts of the undivided two-thirds interest in which he had been adjudicated the owner, and for an accounting for waste. In that suit appellant, among other things, set up as a defense the decree of the Circuit Court of the United States for the Southern District of West Virginia, in the case of A. P. Levassor, executor and trustee, against William Thompson, commissioner of school lands for Boone county, W. Va., J. C. Alderson, and others, supra, and, referring to the same in its answer, said:

"Defendant files herewith a certified copy of the decree aforesaid in the cause of A. L. Levassor, executor, etc., and others, in the Circuit Court of the

United States for the Southern District of West Virginia, marked 'Defendant's Exhibit No. 2' and asks that the same be taken and read as a part of this answer. For the reasons aforesaid defendant therefore avers that the acquisition of title by it to the land conveyed to J. R. Wingfield, trustee, by W. L. Ashby as aforesaid, was not the purchase of a conflicting claim that would operate for the benefit of plaintiff as cotenant with this defendant, in the event that this court should hold that such cotenancy exists, but that under said conveyance defendant acquired good and indefeasible title to the lands therein conveyed, in which plaintiff and his alleged predecessors in title have not now and have never had any rights or claim, and therefore that it was not incumbent upon defendant to plead said title in its former answer in said original suits, since the same was never attacked until the filing of plaintiff's amended and supplemental bill."

That case was taken to the Supreme Court of Appeals of West Virginia, and the court on the 27th day of November, 1917, announced its decision (81 W. Va. 411, 94 S. E. 716), in which the defense interposed by the appellant is squarely met and decided. The first point in the syllabus is as follows:

"An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in the former litigation, but it is sufficient that the status of the suit was such that the parties might have had the matter disposed of on its merits."

Among other things the court in its opinion says:

"But the defendant contends that the Levassor title was not involved upon the former hearing, and that it was not necessary for it to set up that title then in order to get the benefit of it as a defense. It is quite true the plaintiff in that bill did not refer to the Levassor title. He did not rely upon it; in fact, there is no averment in the bill in regard to it, but that fact did not prevent it from becoming a good defense to the bill in toto or pro tanto, as it might cover the whole or a part of the land in controversy. The fact that the plaintiff in his pleading does not set up the defenses which may be made to his case does not preclude the defendant from presenting them, nor does it excuse a failure upon his part to present any defense which he may have that would defeat the claim asserted by the plaintiff. The contention of the defendant was that the plaintiff had no title nor interest in either of these tracts of land. It relied upon the tax sale and the transfer of plaintiff's title under the provisions of the Constitution to defeat any claim plaintiff might have to the land. It now by its answer says that it has two other defenses, one of which entirely defeats the plaintiff's claim to any of this land, to wit, that it has had the adverse possession thereof under color of title for sufficient time to bar plaintiff's right of recovery; and, second, that it has acquired an outstanding title which covers a part of these tracts of land, which title plaintiff is enjoined from claiming under. Why did it not make these defenses in the first suit? They were just as available to it then as they are now; they would have been just as effective then as now. Its defense of adverse possession was just as full and complete then as it is now, and while defendant's claim of defense under the Levassor title might not extend to defeat the whole of plaintiff's claim, it would have been just as effective as a defense to the original bill to defeat the claim of plaintiff to that part of the land covered by that title as it could be now. The fact that a defense does not go to defeat the plaintiff's entire right of recovery does not preserve it for future reliance in case it is not relied upon when the opportunity is given to make it. Ordinarily but one opportunity is given a defendant to make defense, and if he fails to present all of the matters which are available to him to defeat the plaintiffs' right in whole or in part, he will be forever barred from

266 F.—31

thereafter presenting them. This seems to be the well-established doctrine of the authorities cited above. We are therefore clearly of the opinion that the court did not err in denying the defendant the right to set up these additional defenses to the bill."

Thus it will be seen that the Supreme Court of West Virginia has finally settled the law as respects this litigation adversely to the contention of the appellant. The general rule is that, when a court takes jurisdiction of the subject-matter of a particular suit, the parties in interest should raise any and all questions that naturally come within the scope of the issues involved in such controversy. In other words, by this rule it is sought to reach a speedy determination of all questions that are raised or could be raised, so as to secure a final determination of all matters coming within the scope of the issues involved in such controversy. If this were not the rule, we would have chaos and uncertainty, and as a result litigants would be left in doubt as to whether the judgment obtained was conclusive and binding. As was well said in the case of Southern Pacific R. R. Co. v. U. S., 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355:

"The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgment of such tribunals in respect of all matters properly put in issue and actually determined by them."

The rule announced by the West Virginia court is borne out by the Supreme Court of the United States in the case of Dowell v. Applegate, 152 U. S. 327, 14 Sup. Ct. 611, 38 L. Ed. 463. There the plaintiff, Applegate, instituted a suit against Dowell in a state court to enjoin him from asserting title or claim by virtue of his deed under a decree of the federal court to a certain tract of land. Prior to the institution of the suit Dowell had brought suit in the federal court against Jesse Applegate, Daniel W. Applegate, and others to vacate as fraudulent a certain deed to the said Daniel W. Applegate from his father, Jesse Applegate, for a certain tract of land. The deed was vacated, and all the interest of Jesse Applegate in the tract of land of 121.55 acres was decreed to sale, sold, and purchased by and conveyed to Dowell. Some time subsequent to the said purchase Daniel W. Applegate brought a suit against Dowell, alleging that, prior to the commencement of Dowell's suit in the federal court, one W. H. H. Applegate had conveyed to Daniel W. Applegate a tract of 40 acres of land, being a part of said tract of 121.55 acres, and asserting that his title to the 40 acres was paramount to the claim of Dowell, and that the same was not affected by the suit and decree in the federal court

under which Dowell purchased, as the validity of the deed from W. H. H. Applegate to Daniel W. Applegate was in no wise put in issue or determined by the decree in question. Dowell averred in his answer that the deed under which plaintiff now claims was put in issue in the suit in the federal court and determined by its decree. Mr. Justice Harlan, after stating the facts, said:

"It is disclosed by the present suit that, when Daniel W. Applegate answered Dowell's bill, he held the deed of October 8, 1874. If Daniel W. Applegate became, when taking that deed, a bona fide purchaser of the 40 acres of land now in dispute, and if the title so acquired was superior to Dowell's right to have that land sold for his demands against Jesse Applegate, it behooved him to assert that title in defense of the suit brought against him. The very nature of that suit required him to assert whatever interest he then had in the lands, or any part of them, that was superior to any claim of Dowell upon them, whether by judgment liens or in any other form. So far from pursuing that course, he forebore—purposely, as may now be inferred—to claim anything in virtue of the deed of October 8, 1874, and long after the decree under which Dowell purchased, he comes forward with a new, independent suit, based alone upon that deed, as giving him a superior title. His object is—certainly, the effect of his suit, if it be sustained, will be—to retry the issues made in Dowell's suit, so far as they involved the latter's claim to have the 40-acre tract subjected to his demands. The decree in the federal court was an adjudication, as between all the parties to the suit in that court, that Dowell was entitled, in satisfaction of his claims against Jesse Applegate, to subject to sale all the lands his bill sought to reach, which the decree directed to be sold; and that decree, never having been modified by the court that rendered it, nor by this court upon appeal, necessarily concludes every matter that Daniel W. Applegate was entitled, under the pleadings, to bring forward in order to prevent the sale of the lands claimed by him, by whatever title. Having remained silent as to the deed of October 8, 1874, and having allowed the suit in the federal court to proceed to final decree upon the question as to whether the lands described in the bill could be subjected to Dowell's demands—which description included the 40 acres here in dispute—and having been defeated upon that issue, and the decree having been fully executed, he cannot have the same issue retried in an independent suit, based solely upon a title that he was at liberty to set up, but chose not to assert, before the decree was rendered."

It is well settled that a judgment is conclusive upon the questions actually contested and determined, and also upon all matters which might have been litigated and contested in the suit. Phelan v. Gardner, 43 Cal. 306; Rogers v. Higgins, 57 Ill. 244; C. & O. Canal Co. v. Gittings, 36 Md. 276. There are many other questions presented by the assignments of error, which, in our opinion, are immaterial in the view we take of this matter. Therefore we have not deemed it necessary to enter into a discussion of the same.

Considering the whole record, and the decision of the Supreme Court of Appeals of West Virginia, which we find in perfect harmony with the decisions of the Supreme Court of the United States, it necessarily follows that the decree of the court below should be affirmed.