UNITED STATES of America,
Plaintiff,

v.

329.22 ACRES OF LAND, MORE OR LESS, Situate IN BREVARD COUNTY, STATE OF FLORIDA, and Marvin W. Lewis, individually and as Trustee, et al., Defendants.

UNITED STATES of America,
Plaintiff,

v.

936.71 ACRES OF LAND, MORE OR LESS, Situate IN BREVARD COUNTY, STATE OF FLORIDA, and Lo-Je, Inc., a Florida corporation, et al., Defendants.

UNITED STATES of America,
Plaintiff,

v.

940.83 ACRES OF LAND, MORE OR LESS, Situate IN BREVARD COUNTY, STATE OF FLORIDA, and Rudolph W. Haessner, et al., Defendants.

Nos. 1246–Orl–Civ., 1252–Orl–Civ., 1294–Orl–Civ.

United States District Court
M. D. Florida,
Orlando Division.

May 2, 1968.

Order Nov. 7, 1968.

**36**

Francis G. Rearick, Trial Attorney, Land and Natural Resources Division, U. S. Department of Justice, Orlando, Fla., for plaintiff.

Ralph H. Bearden, Jr., Miami, Fla., for intervenor, Sarah E. Walker.

Fleming, O'Bryan & Fleming, Fort Lauderdale, Fla., for defendant Canaveral Beach, Inc.

Harlan Tuck, of Giles, Hedrick & Robinson, Orlando, Fla., for defendants Edwin A. McQuaters and Helen E. McQuaters.

John T. Baron and Crofton, Holland & Starling, Titusville, Fla., for defendant Alys A. Simmons, Administratrix.

Crofton, Holland & Starling, Titusville, Fla., and W. D. Jones, Jr., Jacksonville, Fla., for defendants Harold C. Merrifield and Helen H. Merrifield.

J. Kenneth Ballinger, Asst. Atty. Gen., Tallahassee, Fla., for defendants Trustees of Internal Improvement Fund of State of Florida.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE C. YOUNG, District Judge.

This cause is before this Court for determination of the interest, if any, which SARAH E. WALKER may have in the condemnation awards in the tracts hereinafter listed. Final hearing was held pursuant to notice, evidence was introduced, arguments heard, and briefs have been submitted by all parties in interest.

This Court on May 27, 1966, entered an order which provided, among other things, that the following cases are consolidated for all further proceedings as to the following tracts, namely, Case 1246–Orl–Civ., Tract 5340; Case 1252–Orl–Civ., Tract 3913; and Case 1294–Orl–Civ., Tract 3912. There are certain differences in the facts applicable to the three tracts, but many of the facts and legal conclusions are pertinent to all three of the tracts.

As to each of the tracts, SARAH E. WALKER, who was not named as a defendant in the original proceeding, has intervened, claiming ownership as of the respective dates of condemnation of Tracts 5340, 3912, and a part of Tract 3913. As to each tract, she deraigns her title through identical instruments. As to each tract the defense of the owner named in the condemnation proceeding is that SARAH E. WALKER is not entitled to the proceeds, first, because she has not sufficiently connected herself with the title, and second, that by reason of certain Murphy deeds as to each tract, the predecessor in title through whom she claims had lost all vestige of title prior to the attempted transfer to her. There are additional defenses, some of which apply to all three tracts and some of which do not.

Because of the different interests in the three tracts, the Court will enter herein findings of fact as to those features which the three tracts bear in common, and then separate findings of fact as to each of the three tracts, and then conclude with the Court's conclusions of law applicable to the three tracts collectively.

## FINDINGS OF FACT AS TO ALL THREE TRACTS COLLECTIVELY

1. Walker Properties, Inc., was incorporated under the laws of Florida on July 27, 1925. The names of each incorporator and the number of shares subscribed by each are stated in the certificate of incorporation as follows:

George R. Walker, 996 shares.

F. A. Newell, 2 shares.

F. N. Boudreau, 2 shares.

Although no direct evidence was offered that such shares were actually issued to George R. Walker, the Court concludes as a matter of fact, that the shares of stock in Walker Properties, Inc., were issued in accordance with the subscriptions as stated in the articles of incorporation.

2. Walker Properties, Inc., became the owner in the year 1925 of the premises now described as Tracts 5340 and 3912 and a substantial part of Tract 3913.

3. Walker Properties, Inc., was dissolved by proclamation of the Governor on November 23, 1936, under authority of Section 4, Chapter 16880, Acts of 1935, for failure to pay its corporation capital stock tax.

4. At the time of its dissolution, the members of the last board of directors and stockholders of Walker Properties, Inc., were as follows:

George R. Walker (996 shares)

F. A. Newell and (2 shares)

F. N. Boudreau (2 shares)

5. George R. Walker died on January 29, 1953.

6. F. A. Newell died on June 5, 1960, and his beneficiary has disclaimed any and all interest in the subject properties.

7. Frank Boudreau, also known as F. N. Boudreau, a single man, in his individual capacity and as surviving director and trustee of Walker Properties, Inc., (a dissolved Florida corporation) executed a quit claim deed to Sarah Walker, also known as Mrs. George Walker, dated and acknowledged August 6, 1963, filed for record August 13, 1963 and recorded in official record book 610, page 130 of the public records of Brevard County, Florida, reciting conveyance of premises in Brevard County, Florida as follows:

All of fractional Section 10; all except southeast ¼ of fractional Section 11 and that triangular piece of land,

being the North part of Govt. Lot 1, Section 12 which lies East of Govt. Lot 1 in Section 11, all in Township 22 South, Range 37 East, with all riparian rights belonging thereto, including all lands located and being situated within Titusville Beach, according to the plat thereof, recorded in the Office of the Clerk of the Circuit Court of Brevard County, Florida in Plat Book 3, page 13 except the following described lots to-wit: Lots 1 to 11 incl. in Blocks 15, 16, 17, 18 & 19; Lot 4, Block 2; Lots 1 & 2, Block 5; Lots 1, 4, 6, 11, 12, 13 & 14, Block 6; and Lots 3 & 4, Block 14.

Also included under this deed is all right, title, interest, claim and demand in any of the stock in Walker Properties, Inc. that may have been owned by the Grantor.

8. The will of George R. Walker, deceased, was admitted to probate in the County Judge's Court of Dade County, Florida in August 1966, and on August 18, 1966 an order was entered in that estate declaring that administration was unnecessary, and that by his said will, George R. Walker devised and bequeathed all his property to Sarah E. Walker.

9. Neither Sarah E. Walker nor any predecessor in title through whom she claims paid any real estate taxes assessed against either Tract 5340, Tract 3913 or Tract 3912 from the year 1939 through 1962, or any part thereof; nor has the intervenor Sarah E. Walker shown any return for taxation for the said tracts or any part thereof by herself or any predecessor in title through whom she claims during said times.

10. Neither Tract 5340 nor Tract 3913 nor Tract 3912 nor any part thereof has ever been the homestead of Sarah E. Walker or the homestead of any predecessor in title through whom she claims.

11. The plaintiff, United States of America, entered into possession of the respective premises pursuant to orders of Court granting such possession as follows:

As to Tract 5340, on July 20, 1962, pursuant to order entered on that date.

As to Tract 3913, on August 6, 1962, pursuant to order entered on that date.

As to Tract 3912, on December 13, 1962, pursuant to order entered on that date.

12. The intervenor Sarah E. Walker has wholly failed to show either by herself or by any predecessors through whom she claims, the filing of any action, or the doing of any act, or the making of any effort to exercise any dominion or control over the above tracts or any part thereof prior to receiving the quit claim deed of August 6, 1963 and her petitions to intervene herein.

13. Under the rules of the trustees adopted August 9, 1941, and in effect on the date of the sale of the properties in dispute, now known as Tract 3912 and part of Tract 3913, the Clerk of the Circuit Court was the person charged as agent of the Trustees to advertise the property for sale upon application, to receive and process applications, to conduct the sale, to make out the deeds, to give notice to the former owner or lien holder, and to receive and transmit the proceeds of the sale.

14. Notices of the sales of the disputed property in Tracts 5340, 3912, and 3913 were mailed by the Clerk of the Circuit Court of Brevard County as agent for the trustees to the former owner of record, Walker Properties, Inc., c/o Tatum Bros., Miami, Florida, which notices were returned to the sender undelivered. The register in the Office of the Clerk of the Circuit Court of Brevard County shows that the deeds in 1925 to Walker Properties, Inc., which form the basis of the intervenor's title, were left with the Clerk by George R. Walker, and the address of the grantee was stated as c/o Tatum Bros., Miami. The intervenor has not shown that Walker Properties, Inc., or any person claiming under the corporation ever made a return to the county assessor for taxes with a different mailing address. In the case of Tract 5340, notice was also

mailed by the Clerk to Solar Securities, Inc., record lien holder.

15. The plat of Titusville Beach Subdivision was filed by the predecessor in title of Walker Properties, Inc., June 27, 1922, designating streets therein but containing no formal words of dedication of those streets. The streets were never opened for public use. Since the filing of the plat, the property designated as streets was never assessed for taxes, and taxes were never paid thereon.

## FINDINGS OF FACT RE TRACT 5340

1. Complaint in condemnation and declaration of taking as to Tract 5340 were filed and the deposit of estimated compensation was made by the plaintiff on July 16, 1962.

2. Tract 5340 was described in said complaint and declaration of taking as follows:

That portion of Block 12 lying West of the Westerly R/W line of State Road 401,

LESS AND EXCEPT, the S ½ of Lot 4, Lot 5, the S ½ of Lot 7 and 8.

All in Titusville Beach Subdivision, Sections 11 and 12, Township 22 South, Range 37 East, as recorded in Plat Book 3, Page 13 of the Public Records of Brevard County, Florida.

The above described lots, less the exceptions, contains 2.75 acres, more or less.

3. The complaint and declaration of taking named Harold C. Merrifield and Helen H. Merrifield, his wife, as the sole parties in interest as to said tract, subject only to taxes in favor of Brevard County, Florida.

4. On August 20, 1962, the defendants Harold C. Merrifield and Helen H. Merrifield, his wife, filed their answer claiming fee title ownership of said tract.

5. On May 11, 1964, Sarah E. Walker filed a motion to intervene as a party defendant and filed with said motion her proposed answer, which was accepted by the Court in an order entered on May 22, 1964 granting leave for said intervention.

6. On March 1, 1965, judgment was entered as to said tract in the sum of $10,500.00, on stipulation by all parties agreeing to the same, including the intervener, said judgment reciting that said award shall be paid to the parties entitled thereto after final determination by the Court.

7. Tax sale certificates were issued by the Tax Collector for Brevard County, Florida for nonpayment of taxes as follows:

Certificate 969 of 1930 for 1929 taxes on premises described as All Blocks 7 to 13 Inc. Titusville Beach—A Subd. of part of Sections 11 & 12 platted in Plat Book 3 page 13, T.22 S, $.37E., Brevard County, Florida.

Certificate 7015 of 1933 for 1932 taxes on premises described as All Blocks 7 to 13 Inc. Titusville Beach—a subd of part of Sections 11 & 12 platted in Plat Book 3 Page 13, T.22 S., R.37 E., Brevard County, Florida.

8. County of Brevard Deed No. 696, State of Florida, through the Trustees of the Internam Improvement Fund of the State of Florida, was issued to J. W. Carlile, pursuant to the provisions of Section 9, Chapter 18296, Laws of Florida, Acts of 1937, dated March 13, 1944, filed for record April 17, 1944 and recorded in Deed Book 262, page 241 of the public records of Brevard County, Florida, purporting to convey All Blocks 7 to 13 inc. Titusville Beach—A Subd. of part of Sections 11 & 12 platted in Plat Book 3 Page 13, Secs. 11 & 12, Tp. 22, Rg. 37, Brevard County, Florida. The defendants, Merrifield, claim title through the aforesaid deed.

9. Neither Sarah E. Walker nor any predecessor in title through whom she claims, nor any other person to her knowledge ever redeemed either Tax Sale Certificate 969 of 1930 or Tax Sale Certificate 7015 of 1933.

10. Neither Sarah E. Walker nor any predecessor in title through whom she claims, nor any other person claiming by,

through or under Walker Properties, Inc., within one year from April 17, 1944, brought suit to recover the land described in the aforesaid March 13, 1944, deed from the Trustees of the Internal Improvement Fund of the State of Florida to J. W. Carlile, or to enforce any right of the former owner, or claim by, through or under the said former owner, or to set aside sale by the said Trustees.

11. Neither Sarah E. Walker nor any predecessor in title through whom she claims, nor any other person claiming by, through or under Walker Properties, Inc., at any time prior to July 17, 1962 brought suit to recover the land described in the aforesaid March 13, 1944, deed from the Trustees of the Internal Improvement Fund of the State of Florida to J. W. Carlile, or to enforce any right of the former owner, or claim by, through or under the said former owner, or to set aside the sale by the said Trustees.

12. Between March 13, 1944 and July 17, 1962, neither Sarah E. Walker nor any predecessor in title through whom she claims was ever in the actual and open possession of the lands described in the said deed of March. 13, 1944, as recorded in Deed Book 262, page 241.

FINDINGS OF FACT RE TRACT 3913

1. Complaint in condemnation and declaration of taking as to Tract 3913 were filed and the deposit of estimated compensation was made by the plaintiff on August 3, 1962.

2. Tract 3913 was described in said complaint and declaration of taking as follows:

All of Fractional Section 11, Township 22 South, Range 37 East, Brevard County, Florida.

LESS AND EXCEPT, Blocks 1 through 20, inclusive, of Titusville Beach Subdivision as recorded in Plat Book 3, Page 13 of the Public Records of Brevard County, Florida.

Also, the W ½ of the NE ¼ and Government Lots 1 and 2 in Section 14, Township 22 South, Range 37 East, Brevard County, Florida.

LESS AND EXCEPT, that part of Government Lot 1 in Section 14, being the same parcel as described in Official Record Book 360 Page 486 of the Public Records of Brevard County, Florida, and more particularly described as follows:

Begin at the Northeast corner of Government Lot 1; thence South 89° 54' 30" West along the North line of Government Lot 1, 2042 feet, more or less, to the waters of Conrad Creek; thence Southeasterly, meandering along Conrad Creek 320 feet, more or less; thence North 89° 54' 30" East 1880 feet, more or less, to the East line of Government Lot 1; thence North 0° 05' 30" West along the East line 296.50 feet to the beginning.

The above described tract or parcels of land, less the exceptions, contain 633.18 acres, more or less.

3. The complaint and declaration of taking named Canaveral Beach, Inc., a corporation and Edwin A. McQuaters and Helen E. McQuaters, his wife, as the principal defendants, subject to taxes in favor of Brevard County.

4. On September 17, 1962, the defendant, Canaveral Beach, Inc., filed its answer claiming fee title ownership of said tract.

5. On July 2, 1964, Sarah E. Walker filed a motion to intervene as a party defendant and submitted with said motion her answer as to said tract. Although no formal order was entered granting said motion to intervene, Sarah E. Walker has been treated as a party to this cause, and is so considered by the Court as of July 2, 1964.

6. On November 30, 1964, Edwin A. McQuaters and Helen E. McQuaters, his wife, filed an answer attacking the Walker claim, alleging among other things adverse possession and payment of taxes for more than seven years.

7. The defendant, Edwin A. McQuaters, through whom the defendant Canaveral Beach, Inc., claims, entered in-

to possession of the disputed portions of Tract 3913 under claim of title to those properties described in their deeds exclusive of any other right, founded upon two written instruments as being conveyances of the premises in question, to-wit: a deed from the Trustees of the Internal Improvement Fund of the State of Florida to Edwin A. McQuaters dated June 19, 1944, filed for record July 10, 1944, and recorded in Deed Book 262, page 263, and a deed from the Trustees of the Internal Improvement Fund dated April 19, 1945, filed for record May 14, 1945, and recorded in Deed Book 262, page 485, of the public records of Brevard County, Florida.

8. The claim of intervenor, Sarah E. Walker, did not extend to all of Tract 3913 but only so much thereof as was claimed by defendant, Edwin A. McQuaters, pursuant to the said two deeds from Trustees of the Internal Improvement Fund.

9. The possession of defendant, Edwin A. McQuaters was actual possession and evidenced by his use of the disputed property in connection with his farming operations and homestead which was on contiguous land which he had previously acquired. This possession was further evidenced by his improvement of the property in various ways, by his fencing of the property on the easterly and approximately one-half of the north and south boundaries and by his construction of a large ditch on the westerly side and on the remainder of the north and south boundaries to connect with the fence, and by his utilization of the property for domestic livestock range as well as other agricultural and recreational purposes. The fences and the ditch were sufficient to contain his livestock within the bounds thereof. The possession of defendant Edwin A. McQuaters was open, adverse, notorious, continuous, exclusive and under claim of right for a period in excess of seven (7) years, and defendant McQuaters paid all taxes assessed against said property from the time of issuance of the two deeds to him until his subsequent con-

veyance of the property to defendant Canaveral Beach, Inc., in the year 1960. Possession was delivered to the grantee on July 1, 1961.

10. Tax sale certificates were issued by the Tax Collector for Brevard County, Florida, for nonpayment of taxes as follows:

Certificate 987 of 1932 for 1931 taxes on premises described as W ½ (Except Titusville Beach Subd.) Sec. 11, T. 22 S., R. 37 E., Brevard County, Florida.

Certificate 7000 of 1933 for 1932 taxes on premises described as W ½ (except Titusville Beach Subd.) Sec. 11, T. 22 S., R. 37 E., Brevard County, Florida.

11. County of Brevard Deed No. 719, State of Florida, through the Trustees of the Internal Improvement Fund of the State of Florida, was issued to Edwin A. McQuaters pursuant to the provisions of Section 9 of Chapter 18296, Laws of Florida, Acts of 1937, dated June 19, 1944, filed for record July 10, 1944, and recorded in Deed Book 262, page 268 of the public records of Brevard County, Florida, purporting to convey all of W ½ except Titusville Beach Subd. of Sec. 11, Tp. 22, Rg. 37, Brevard County, Florida.

12. Tax Sale Certificates were issued by the Tax Collector for Brevard County, Florida for nonpayment of taxes as follows:

Certificate 980 of 1930 for taxes on premises described as All Blocks 20 to 41, inc., Titusville Beach A Subd. of part of Sections 11 & 12 platted in Plat Book 3, page 13, T. 22 S, R. 37 E.

Certificate 7061 of 1933 for 1932 taxes on premises described as All Blocks 21 to 41 inc. Titusville Beach—a subd. of part of Sections 11 and 12 platted in Plat Book 3, page 13, T. 22 S. R. 37 E.

Certificate 988 of 1932 for 1931 taxes on premises described as the West ½ of the NE ¼ (except Titusville Beach Subdivision) of Section 11, Township 22 South, Range 37 East.

Certificate 7001 of 1933 for 1932 taxes on premises described as the West ½

of the NE ¼ (Titusville Beach Subd.) of Section 11, Township 22 South, Range 37 East.

13. County of Brevard Deed No. 913, State of Florida, through the Trustees of the Internal Improvement Fund of the State of Florida, was issued to Edwin A. McQuaters, pursuant to the provisions of Section 9 of Chapter 18296, Laws of Florida, acts of 1937, dated April 19, 1945, filed for record May 14, 1945 and recorded in Deed Book 262, page 485 of the public records of· Brevard County, Florida, purporting to convey all Blocks 21 to 41, Inc., Titusville Beach—a Subd. of Part of Secs. 11 & 12, Platted in Plat Book 3, Page 13, Tp. 22, Rg. 37; and W ½ of NE ¼ (Except Titusville Beach Subd.) Sec. 11, Tp. 22, Rg. 37, Brevard County, Florida.

14. Neither Sarah E. Walker nor any predecessor in title through whom she claims, nor any other person to her knowledge ever redeemed either Tax Sale Certificate 987 or 1932, or Certificate 7000 of 1933, or Certificate 980 of 1930, or Certificate 7061 of 1933, or Certificate 988 of 1932, or Certificate 7001 of 1933.

15. Neither Sarah E. Walker nor any predecessor in title through whom she claims nor any other person claiming by, through or under Walker Properties, Inc., within one year from July 10, 1944 brought suit to recover the land described in the deed from the Trustees of the Internal Improvement Fund of the State of Florida to Edwin A. McQuaters dated June 19, 1944, filed for record July 10, 1944 and recorded in Deed Book 262 at page 268 of the public records of Brevard County, Florida, or to enforce any right of the former owner, or claim by, through or under the said former owner, or to set aside the sale by the said Trustees.

16. Neither Sarah E. Walker nor any predecessor in title through whom she claims nor any person claiming by, through or under Walker Properties, Inc., at any time prior to August 4, 1952 brought suit to recover the land de-

scribed in the deed from the Trustees of the Internal Improvement Fund of the State of Florida to Edwin A. McQuaters dated June 19, 1944, recorded in Deed Book 262, page 268 of the public records of Brevard County, Florida, or to enforce any right of the former owner, or claim by, through or under the said former owner, or to set aside the sale by the said Trustees.

17. Between June 19, 1944 and August 4, 1962, neither Sarah E. Walker nor any predecessor in title through whom she claims was ever in the actual and open possession of the lands described in said Deed Book 262 at page 268.

18. Neither Sarah E. Walker nor any predecessor in title through whom she claims nor any person claiming by, through or under Walker Properties, Inc., within one year from May 14, 1945 brought suit to recover the land described in the deed from the Trustees of the Internal Improvement Fund of the State of Florida to Edwin A. McQuaters dated April 19, 1945, filed for record May 14, 1945 and recorded in Deed Book 262 at page 485 of the public records of Brevard County, Florida, or to enforce any right of the former owner, or claim by, through or under said former owner or to set aside the sale by the said Trustees.

19. Neither Sarah E. Walker nor any predecessor in title through whom she claims nor any person claiming by, through or under Walker Properties, Inc., at any time prior to August 4, 1962 brought suit to recover the. land described in the deed from the Trustees of the Internal Improvement Fund of the State of Florida to Edwin A. McQuarters, dated April 19, 1945, filed for record May 14, 1945 and recorded in Deed Book 262 at page 485 of the public records of Brevard County, Florida, or to enforce any right of the former owner, or claim by, through or under the said former owner, or to set aside the sale by the said Trustees.

20. Between April 19, 1945, and August 4, 1962, neither Sarah E. Walker

nor any predecessor in title through whom she claims was ever in the actual and open possession of the land described in said Deed Book 262 at page 485.

21. Edwin A. McQuaters did not personally appear at the sale of those portions of Tract 3913 resulting in the issuance of Brevard County Deeds Nos. 719 and 913. Rather, his bid was submitted by either the Clerk of the Circuit Court or the Deputy Clerk of the Circuit Court acting as his agent, and the land was struck off in favor of Mc-Quaters in his absence.

### FINDINGS OF FACT
### RE TRACT 3912

1. Complaint in condemnation and declaration of taking were filed and the deposit of estimated compensation was made by the plaintiff on December 12, 1962.

2. Tract 3912 was described in said complaint and declaration of taking as follows:

All of Fractional Section 10, Township 22 South, Range 37 East, Brevard County, Florida.

LESS AND EXCEPT, the unsurveyed islands in Pintail Creek and the unsurveyed island lying between Pintail and Bluebill Creeks.

The above tract or parcel of land, less the exception, contains 152.09 acres, more or less.

3. The complaint and declaration of taking named Alys A. Simmons, Administratrix of the Estate of G. M. Simmons, deceased, as the principal party in interest, subject to taxes in favor of Brevard County, Florida.

4. On July 31, 1963, the defendant, Alys A. Simmons, Administratrix of the Estate of G. M. Simmons, deceased, filed her appearance.

5. On February 28, 1964, judgment was entered in favor of Alys A. Simmons as Administratrix of the Estate of G. M. Simmons, deceased, on stipulation with said defendant, in the sum of $29,900.00.

6. On April 28, 1964, Sarah E. Walker filed her motion to intervene as a defendant and filed with her motion a proposed answer. On April 29, 1964, an order was entered allowing intervention.

7. Tax sale certificates were issued by the Tax Collector for Brevard County, Florida for nonpayment of taxes as follows:

Certificate 986 of 1932 for 1931 taxes on premises described as All Fractional Sec. 10, T. 22 S., R. 37 E., Brevard County, Florida.

Certificate 6999 of 1933 for 1932 taxes on premises described as All fractional Sec. 10, T. 22 S., R. 37 E., Brevard County, Florida.

8. County of Brevard Deed No. 820, State of Florida, through the Trustees of the Internal Improvement Fund of the State of Florida, was issued to G. M. Simmons and Edna Lucille Simmons, his wife, pursuant to the provisions of Section 9, Chapter 18296, Laws of Florida, Acts of 1937, dated November 10, 1944, filed for record December 5, 1944 and recorded in Deed Book 262, page 384 of the public records of Brevard County, Florida, purporting to convey all Fractional Sec. 10, Tp. 22, Rg. 37, Brevard County, Florida.

9. Neither Sarah E. Walker nor any predecessor in title through whom she claims, nor any other person to her knowledge ever redeemed either Tax Sale Certificate 986 of 1932, or Tax Sale Certificate 6999 of 1933.

10. Neither Sarah E. Walker nor any predecessor in title through whom she claims, nor any other person claiming by, through or under Walker Properties, Inc., within one year from December 5, 1944, brought suit to recover the land described in the deed from the Trustees of the Internal Improvement Fund of the State of Florida to G. M. Simmons and Edna Lucille Simmons, his wife, dated November 10, 1944, filed for record December 5, 1944, and recorded in Deed Book 262, page 384 of the public records of Brevard County, Florida, or to enforce

any right of the former owner or claim, by, through or under said former owner or to set aside the sale by the said Trustees.

11. Neither Sarah E. Walker nor any predecessor in title through whom she claims nor any person claiming by, through or under Walker Properties, Inc., at any time prior to December 13, 1962, brought suit to recover the land described in the deed from the Trustees of the Internal Improvement Fund of the State of Florida to G. M. Simmons and Edna Lucille Simmons, his wife, dated November 10, 1944, filed for record December 5, 1944 and recorded in Deed Book 262, at page 384 of the public records of Brevard County, Florida, or to enforce any right of the former owner or claim by, through or under said former owner or to set aside the sale by the said Trustees.

12. Between November 10, 1944, and December 13, 1962, neither Sarah E. Walker nor any predecessor in title through whom she claims was ever in the actual and open possession of the land described in said Deed Book 262 at page 384.

13. G. M. Simmons, who was then the Clerk of the Circuit Court of Brevard County, made application in his own name pursuant to Section 9, Chapter 18296, Acts of 1937, on March 31, 1944, for the advertising for sale of Tract 3912, naming a minimum bid of $80.00, together with costs of $6.00.

14. G. M. Simmons and Edna Simmons, his wife, subsequently purchased the property. Other than the fact of actual purchase by the Clerk of the Court, there is no showing that the sale was otherwise improperly conducted, or otherwise tainted.

## CONCLUSIONS OF LAW

1. The burden rests upon the intervenor, Sarah E. Walker, to establish her interest in Tracts 5340, 3913, and 3912, upon the strength of her own title. Her claims rest upon a quitclaim deed from F. N. Boudreau, individually, and

as last surviving trustee of Walker Properties, Inc., dated August 6, 1963, and as the only heir under the will of George R. Walker, her husband, who owned 996 of 1000 shares of Walker Properties, Inc.

2. Because Walker Properties, Inc., was a closely held family corporation, and in the absence of a showing to the contrary, the Court finds that the ownership of the shares did not change after the date of original issue, so that at the time of his death in 1953, George R. Walker owned 996 shares of Walker Properties, Inc. Bludworth v. Bray, 59 Fla. 437, 52 So. 957 (1910).

3. Defendants and the United States, as amicus curiae, contend that the claims of the intervenor arising under the will of George R. Walker are barred, as to all tracts, by the operation of Section 95.23, Florida Statutes, F.S.A. which provides in pertinent part:

"After the lapse of twenty years from the record of any deed or the probate of any will purporting to convey lands no person shall assert any claim to said lands as against the claimants under such deed or will, or their successors in title."

Section 732.26, Florida Statutes, F.S.A. provides in part:

"The will of any person who heretofore has died a resident of the state or any person who hereafter dies a resident of the state must be admitted to probate in an original proceeding in the state in order to establish its validity. Until so admitted to probate, such will shall be ineffective to convey title to, or the right to possession of, real or personal property of the testator; * * *."

Accordingly, defendants maintain that no claim could be made under the will until after the will had been admitted to probate, and since the will was not admitted to probate until 1966, more than twenty years after all the deeds in question were recorded, intervenor's claims under the will are barred by F.S. 95.23, F.S.A.

Although title does not pass under a will until it is admitted to probate, the vesting of title relates back to the date of death of the testator, F.S. 731.21, F.S.A.; Pournelle v. Baxter, 151 Fla. 32, 9 So.2d 162, 163 (1942); 48 A.L.R. 1035. In the case at bar, the title of Sarah Walker to whatever assets passed to her through the estate of George R. Walker vested in her January 29, 1953, and the extent of the running of the statute of limitations is to be determined, not until the date the will was admitted to probate, but until the dates intervenor's claims were filed in these actions.

Accordingly this Court holds that intervenor's claim to Tract 5340, under the will of George R. Walker, having been filed herein on May 11, 1964, which was more than twenty years after defendants' deed was recorded on April 17, 1944, is barred by the statute of limitations, F.S. 95.23, F.S.A. However, her claims under the will as to Tracts 3912 [1] and 3913,[2] having been filed within the period of limitations are not so barred.

4. In addition to her claim under the will of George R. Walker, Sarah Walker lays claim to the subject properties under a certain quitclaim deed executed by F. N. Boudreau on August 6, 1963. Under the law of Florida effective at the date of the dissolution of Walker Properties, Inc. (Section 9 of Chapter 16880, Laws of Florida 1935, as supplemented by Chapter 20895, Laws of Florida, 1941) the assets of Walker Properties, Inc., were subject to being disposed of by the last board of directors of the corporation as trustees who had the authority to dispose of the property within twenty years from such dissolution.

When Walker Properties, Inc., was dissolved by operation of law November 23, 1936, the last board of directors con- sisted of George R. Walker, F. N. Boudreau, and F. A. Newell, and they thereafter for twenty years held legal title to the assets of the dissolved corpo- ration as trustees for the benefit of the stockholders. The stockholders as of the date of dissolution were George R. Walker (996 of 1000 shares), F. A. Newell (2 of 1000 shares) and F. N. Boudreau (2 of 1000 shares).

When George R. Walker died in 1953, Sarah Walker, through relation back of title after the probate of the will in 1966, succeeded to his $^{996}/_{1000}$ interest in the stock of the corporation. Under Florida law if no disposition of the corporate assets is made within twenty years of dissolution, title to the as- sets vests in the stockholders. That period of limitations expired November 23, 1956, and as of that date title to the corporate assets vested in the stock- holders, Sarah Walker, F. A. Newell,[3] and F. N. Boudreau, to the extent of their interests in the corporation.

Accordingly, at the time F. N. Boudreau executed a quitclaim deed in 1963, the only interest that he may have had in the corporate assets, whatever they may have been, was a legal title to an undivided $^1/_{500}$th interest as an owner of 2 of 1000 shares in the dissolved corporation. Thus, any claim which Sarah Walker may have in the subject properties arising solely through the Boudreau quitclaim deed would be $^1/_{500}$th undivided interest in the subject properties. However, the transfer, even to this extent, was void as being in violation of the Anti-Assignment Act. However, there was no separation of legal and beneficial title at the time of the transfer, those interests having been merged by operation of law in 1956. The quitclaim deed (executed after title to

---

1. The subject Murphy Act deed to Tract 3912 was filed of record on December 5, 1944; Sarah E. Walker's motion to intervene as to Tract 3912 was filed herein on April 28, 1964.

2. The subject Murphy Act deeds to Tract 3913 were filed of record on July 10, 1944 and May 14, 1945; Sarah E. Walk- er's motion to intervene as to Tract 3913 was filed herein on July 2, 1964.

3. F. A. Newell died June 5, 1960, and his beneficiary has disclaimed any and all interest in the subject properties.

these lands passed to the United States through condemnation) which sought to transfer a 1/500ths interest in the proceeds from these condemnation actions was a transfer prohibited by the Anti-Assignment Act and Sarah Walker has no valid claim here to the Boudreau undivided 1/500th interest in the three subject tracts. The claims of Sarah Walker will be considered hereinafter only as successor in interest to an undivided 249/250th (996/1000ths) share in the assets of Walker Properties, Inc.

5. The record title holders to Tracts 3912, 3913, and 5340, lay claim thereto through recorded Murphy Deeds issued to them or their predecessors. Intervenor contends that those deeds are defective and void for several reasons, and therefore, that title to the subject properties (except for streets which are discussed separately) is vested in the State of Florida under the Murphy Act, F.S. 192.38, F.S.A., subject to the right of the former owner or a successor thereof to redeem the properties.

(a) Intervenor maintains that the subject deeds are void for ambiguity in that they locate the property described therein as being in Township 22, Range 37, without designating the township and range as lying north, south, east or west. A deed is not void for uncertainty if it describes property in Brevard County, Florida, and locating it in Township 22, Range 37, rather than in Township 22 South, Range 37 East, in view of Section 7.05 of the Florida Statutes, F.S.A., which describes all property in Brevard County as located South and East.

(b) Intervenor maintains that certain of the tax certificates and the deeds based thereon are void as having been issued on July 4th, a legal holiday. A tax sale certificate is not void by reason of the fact that it was issued on the Fourth of July; 50 Am.Jur. "Sundays and Holidays", § 80; Russ v. Gilbert, 19 Fla. 54.

(c) Tax certificate 980, issued June 2, 1930, erroneously describes the property on which taxes are due as Blocks 20–41, rather than Blocks 21–41. The apparently erroneous description in Tax Certificate 980 issued June 2, 1930, is immaterial and the question raised thereby is moot because Brevard County Deed No. 913 is based upon two additional certificates—Certificate 7061, issued August 7, 1933, and Certificate 367, issued August 5, 1934—and the description contained in the deed is accurate.

(d) The deed to G. M. Simmons and Edna Lucille Simmons, his wife, dated November 10, 1944, filed December 5, 1944, conveyed: "All fractional Sec. 10, Tp. 22, Rg. 37, Brevard County, Florida, 154 Acres". Intervenor contends that this deed is void for ambiguity in that fractional section 10 contains more than 154 acres and it is not possible to determine from the deed which 154 acres were intended to be conveyed thereby. The law is clear and well settled that a description contained in a deed of conveyance takes priority over a statement of acreage. Lopez v. Smith, 145 So.2d 509 (Fla.App. 1962). This Court concludes therefore, that Brevard County Deed No. 820 was an attempted conveyance of all of fractional Section 10, Tp. 22, Rg. 37, regardless of the number of acres contained therein.

(e) Intervenor also contends, that all Murphy deeds involved in these causes are void due to lack of requisite notice to the former owner of the properties prior to sale.

The Rules of the Trustees effective August 9, 1941, and at the times the Murphy Act deeds herein were issued provided:

"With the explicit understanding that no notice to former owner, nor information given him, nor accommodation afforded by such notice or information that such sale will be held, shall be construed to restored or attempt to restore any right, title or interest extinguished by Statute (F.S. 192.38), that the giving of such in-

formation is directional only, that whether given or omitted shall in no way affect the sale held pursuant to advertisement, or any deed arising therefrom the Trustees adopt the following rule:

### INFORMATION TO FORMER OWNER, ET CETERA

"The Clerk is directed to mail a registered letter, with return receipt requested, to the former owner or person last paying taxes, or lien holder of record, or to whom said lands were last assessed, if he be know, informing him that on _____ date (naming the date of sale) 'the parcel or parcels hereinafter described (describing the parcels by date and number of certificate and the description appearing thereon, in which such person formerly had an interest) will be offered for sale at the Courthouse to the highest and best bidder for cash.' \* \* \*.'"

Intervenor argues that absent actual notice to the former owner or constructive notice following a diligent search for the former owners, the Murphy Act, described as a gigantic legislative foreclosure, would have been unconstitutional. Despite the rules of the Trustees that such notice is directional only, intervenor argues that it must be mandatory.

In Shuptrine v. Wohl Holding Corporation, 147 Fla. 185, 3 So.2d 524 (1941), the Florida Supreme Court held that lack of notice to the former owner of a Murphy Act sale was a fatal defect and that the former owner should be permitted to redeem the property. In *Shuptrine*, the former owner, Wohl Holding Corporation, applied to the county tax collector to determine the amount of taxes due upon the property and to redeem the property. On advice that 1933 and 1934 taxes were outstanding Wohl paid the taxes, redeemed the property, and entered possession. Subsequently, the property was sold under the Murphy Act on the basis of outstanding 1932 taxes of which Wohl had not been advised. On two grounds, the Court held the second sale and deed defective;

first, that the equity of the case demanded such a result, and secondly, because the rules of the Trustees then in effect required notice to the former owner prior to the sale of the property. On rehearing, the Court stated:

"In our former opinion, we held in substance that (Wohl) should in equity be permitted to redeem the lands in question if, as alleged, when it applied for and paid the taxes for 1933 and 1934, the tax collector did not advise him that there was an outstanding tax certificate for 1932 which was held by the state and unpaid. \* \* \* We are accordingly convinced that in view of these equities, the confusion and error that was shown to have been committed by the taxing officers and the effort made in good faith by respondent, it should be permitted to redeem the lands in question.. Taking one's property away from him is a serious matter and it should not be permitted by processes akin to that in which the spider weaves her web to entable a fly."

It is immediately apparent that the facts and circumstances giving rise to the equities in *Shuptrine* are wholly unlike those at bar.

Immediately after the announcement of the *Shuptrine* decision, the Trustees amended their rules to provide that notice to former owners would no longer be mandatory but would be directional only, so that the second ground for the holding in *Shuptrine,* based on the rules of the Trustees then in effect is inapplicable.

Intervenor also points to Section 192.381 of the Florida Statutes as authority for the proposition that the former owner's right of redemption must be protected by notice of sale. First, Section 192.381 does not establish redemption as a matter of right; it states:

"Lands acquired by the state, through delinquent ad valorem tax liens and the Murphy Act which have not been previously sold, conveyed, dedicated or otherwise disposed of by the state, *may,*

*at the discretion of the trustees of the internal improvement fund*, be sold and conveyed, by the state by and through its said trustees to the record fee simple owner of said lands, as of June 9, 1939, * * *." (Emphasis added.)

Secondly, the statute by its very terms is applicable only to sales made subsequent to its enactment in 1953, some eight or nine years after the dates of the sales involved in these cases.

Finally, the Court is of the opinion that the Clerk of the Circuit Court, acting on behalf of the Trustees, did comply with the statutes and with the rules of the Trustees by sending notice as he did.

7. Defendant McQuaters and his successor in interest, Canaveral Beach, Inc., claim that even if the Murphy deeds are held to be void, that McQuaters became vested in title by virtue of his adverse possession of those portions of Tract 3913 in dispute. There is no question that McQuaters was in open, notorious, exclusive, continuous, and actual possession of the properties in dispute, and there is no question that such possession was under color of title except as to the streets platted in Titusville Beach Subdivision.

Intervenor contends first, that McQuaters cannot succeed in his claim by adverse possession because such adverse possession cannot run against the State of Florida, F.S. 95.15, F.S.A.,[4] and that as to all of the disputed property in Tract 3913 except streets, title was vested in the State of Florida in 1939 by virtue of the Murphy Act, and remained in the State of Florida ostensibly until the state purported to convey title by its Murphy deeds of 1944 and 1945. If the Murphy deeds are of no legal effect, so the argument goes, title remained in the state and McQuaters cannot lay claim by virtue of adverse possession against the state.

As to the streets, intervenor maintains that because the state assessed no taxes

on the streets that its certificates forming the basis for the state's title and the subsequent Murphy deeds could not be construed to have included the streets. Therefore, Sarah Walker contends that McQuaters' claim of adverse possession of the streets, if valid at all must be valid without color of title, and that since F.S. Section 95.18 F.S.A. requires a return of the property to the tax assessor and payment of taxes on the property within one year after entering into possession in order to establish a claim of adverse possession without color of title, and since taxes were never assessed on the streets, there can be no claim of adverse possession thereto.

 The Court is not here concerned with a dispute between McQuaters and the State of Florida, and if it were there could be no question of adverse possession. Even if the Murphy deeds were defective, the State would be estopped to deny the validity of its own deeds, and the case would never reach the question of adverse possession.

In Trustees of Internal Improvement Fund v. Bass, 67 So.2d 433 (Fla.1953), the Supreme Court of Florida affirmed the dismissal of a suit in ejectment brought by the Trustees against the successor of a Murphy Act grantee, even though it was admitted that the assessment leading to the Murphy Act sale was invalid.

There the Court said:

" * * * the present owner, Roscoe Bass, purchased (the land) from Saules in 1941, is now in possession of them, has placed a fence around them, has improved them in other respects and has paid the taxes on them each year since he purchased them.

In its inception the tax assessment was not authorized by law and had it been moved against promptly might have been set aside, but the present owner has been in possession more than eleven years under a deed issued

---

4. Adverse possession shall not run against the state or any state board or state agency, holding a purchase money mortgage on lands conveyed by the state or any state board or state agency.

by the State. Under such a state of facts, even if his title is not good by adverse possession the State is estopped to question it. Daniell v. Sherill, Fla., 48 So.2d 736, 23 A.L.R.2d 1410."

Clearly, McQuaters and his successor, have the same if not greater equities in their favor than did Bass. See Trustees, etc. v. Lobean, 127 So.2d 98 (Fla.1961). Notwithstanding the doctrine of estoppel, the State of Florida, through the Trustees of the Internal Improvement Fund, has disclaimed any interest in Tract 3913 (save oil and mineral reservations not in dispute here).

The state having been estopped to assert whatever claim it might have had, the question is whether the adverse possession of McQuaters may be asserted to defeat the claims of the intervenor. It is the conclusion of the Court that McQuaters did establish his title by adverse possession against the intervenor. Sarah Walker claims to have an interest of redemption as successor to the former owner of the subject property, and whatever cloud upon title this interest may have represented prior to the expiration of seven years adverse possession was extinguished at the end of those seven years. F.S. 95.16, F.S.A.; F.S. 95.17, F.S.A.

On June 27, 1922, the predecessor in title to Walker Properties, Inc., filed a plat of Titusville Subdivision forming a part of Tract 3913. The plat contained streets but contained no formal words of dedication. As such the filing of the plat constituted an offer to dedicate the streets. Intervenor contends that this offer to dedicate was never accepted by competent authority, and since the property platted as streets was never subject to tax assessment, such property never passed to the State of Florida under the Murphy Act nor to McQuaters under the Murphy deed. Consequently, intervenor maintains that title to the streets is vested in her to the extent she is successor in interest to Walker Properties, Inc.

Although an offer of dedication, to be binding, must be accepted, such acceptance may be implied from the circumstances and need not be manifested by any formal act. See 10 Fla. Jur. Dedication § 18; 26 C.J.S. Dedication § 40 et seq. and cases cited therein. Under the peculiar circumstances of this case, the Court concludes that the offer to dedicate was accepted by virtue of the failure of the taxing authority to assess taxes upon the property platted as streets; Boyer, Florida Real Estate Transactions, Section 30.05; Am.Jur. Dedication, Section 33; cf., 26 C.J.S. Dedication § 40(7), and authorities cited therein. Accordingly, whatever interest Walker Properties, Inc., or its predecessor in title may have had to platted streets was lost by dedication.

Intervenor also lays claim to title to property platted as streets in Tract 5340, however, the Court concludes from the description of Tract 5340, that streets are not included in the condemnation of that tract, and, therefore, that as to that tract the question of streets is not before the Court at this time.

8. Intervenor contends that the Murphy deed to G. M. Simmons and Edna Lucille Simmons, his wife, dated November 10, 1944, filed December 5, 1944, to that property known herein as Fractional Section 10, Tp. 22, Rg. 37, Brevard County, Florida (Tract 3912) is void because the grantee, G. M. Simmons, was Clerk of the Circuit Court for Brevard County, Florida, at the time of the sale and was in charge of conducting the sale as agent of the Trustees of the Internal Improvement Fund from the Trustees to himself and his wife. The intervenor further contends that the Murphy Act deeds, County of Brevard deeds Nos. 719 and 913, to Edwin A. McQuaters are void for the reason that McQuaters did not appear at the respective sales but was represented by the Clerk or Deputy Clerk of the Circuit Court who bid on his behalf.

It is unnecessary for the Court to rule upon the validity of the Mc-

**50**

Quaters' sales, since the Court has ruled that neither the State of Florida nor Sarah E. Walker is in a position to challenge McQuaters' title, the former by estoppel and the latter because of McQuaters' adverse possession of the property. Unlike the circumstances attending the McQuaters' tract, however, the Court finds insufficient equities present with respect to the Simmons Tract (3912) to invoke the doctrine of equitable estoppel against the State of Florida. There is no evidence to show that Simmons or his successors in title improved the land, and there is no showing that they were ever in adverse possession of the land as was McQuaters. Simmons did no act with respect to the land other than to pay taxes under color of a deed alleged to be void.

 Although the Trustees of the Internal Improvement Fund have filed a disclaimer of any interest in Tract 3912 (other than oil and mineral rights not in dispute here), the Court concludes that such disclaimer could not and did not extinguish whatever rights Sarah E. Walker may have had in the land and in the award which stands in place of the land. Therefore, it is necessary to determine the validity and consequences of the sale of Tract 3912 to G. M. Simmons and his wife.

 Florida substantive law would control this issue, but since no Florida precedent has been found precisely on point, we are bound to make a determination as to what Florida courts would hold if this issue were presented to them. Based upon statutory law as it now exists and decisions of state courts in other states, it is the conclusion here that the Florida courts, if called upon to pass on this issue, would hold that the Simmons sale was contrary to the public policy of the State of Florida and void.

Section 194.601 of the Florida Statutes, F.S.A., although enacted subsequent to the sales in question and not directed specifically to Murphy Act sales, is indicative of the public policy of the state. That section provides that where a tax deed is invalid because the purchaser or one of the purchasers was a Clerk of the Circuit Court of the county where the sale took place, the board of county commissioners may in its discretion " * * * convey the title to said lands to the record fee simple owners or the record grantees or successor grantees of said purchaser or purchasers from the county and execute a proper conveyance therefor without further public notice or without further consideration." Section 194.-601 does not establish the rule that such sales are invalid; it appears to confirm such a rule and to establish the possible consequences of such a sale (though not a Murphy Act sale) subsequent to the enactment of Section 194.601. Cases are legion holding that a public officer having duties connected with the sale of property may not purchase at such sale, and according to the great weight of authority, such purchases are absolutely void, either under statutory or common law or both. Okanogan Power & Irrigation Co. v. Quackenbush, 107 Wash. 651, 182 P. 618, 5 A.L.R. 966 (1919); Kitsap County v. Bubar, 14 Wash.2d 379, 128 P.2d 483 (1942); Barker v. Jackson, 90 Miss. 621, 44 So. 34 (1907); Kirk v. St. Thomas' Church, 70 Iowa 287, 30 N.W. 569 (1886); Shrewsbury v. Horse Creek Coal Land Co., 78 W.Va. 182, 88 S.E. 1052 (1916); Cole v. Moore, 34 Ark. 582 (1879); Spicer v. Rowland, 39 Kan. 740, 18 P. 908 (1888); see also, 51 Am.Jur. Taxation, Section 1059; 85 C.J.S. Taxation § 809(i); 5 A.L.R. 969.

It is of no consequence that the sale was conducted in a perfectly fair and equitable manner and was in no way tainted by fraud. As stated in Spicer v. Rowland, supra, "The law cuts up, root and branch, the power to purchase, and the temptation to defraud." In Pierce v. Benjamin, 14 Pick. (Mass.) 356, 25 Am. Dec. 396, the Court in holding such a sale voidable, stated:

"Such a practice must, if it did not in the present instance, lead to fraud in the publication of notices, and the selection of places of sale. The respective duties of buyer and seller are

incompatible with each other, and no person, in whatever capacity he may undertake to act, can rightfully sustain both characters."

 The deed, being void from the date of issue is not protected from challenge by the running of the Murphy Act statute of limitations, F.S. 192.48, F.S.A. See Reed v. Fain, 145 So.2d 858 (Fla. 1962); Barker v. Jackson, supra; Spicer v. Rowland, supra.

 The sale to Simmons and his wife, having been void, the land was not disposed of by the state and title to the land was vested in the state as of the date of taking in this condemnation action, subject to being disposed of under Section 192.381, Florida Statutes, F.S.A. Section 192.381, provides:

> "Lands acquired by the state, through delinquent ad valorem tax liens and the Murphy Act (ch. 18296, laws of Florida, acts of 1937), which have not been previously sold, conveyed, dedicated or otherwise disposed of by the state, *may at the discretion of the trustees of the internal improvement fund,* be sold and conveyed, by the state by and through its said trustees, to the record fee simple owner of said lands, as of June 9, 1939, the date said lands became absolutely vested in the state, or those claiming by, through or under him by virtue of a conveyance, mortgage, lien or agreement, *upon such terms and conditions and for such consideration as to said trustees shall seem equitable and proper.* * * * " (Emphasis added.)

Obviously, the Trustees are, at this time, in no position to dispose of the land, title thereto having passed to the United States, however, the money representing the value of the land will stand in place of the land, and for purposes of exercising their discretion under F.S. 192.-381, F.S.A., the Trustees should treat the condemnation award as if it were the land.[5]

It appears from the record in this cause, and there is no evidence to the contrary, that G. M. Simmons paid value for the purchase of Tract 3912, and since the date of purchase he or his successors in title have paid the taxes assessed against the property. Although the Court has concluded that Simmons' purchase was void, under the circumstances, justice and equity require, that in the event the Trustees determine that someone other than the estate of Simmons should succeed to the condemnation award, then the Simmons estate should be reimbursed from the award an amount equal to the consideration paid for the land and taxes paid on the land since acquisition with interest at six percent (6%) per annum from the respective dates of payment. See Cole v. Moore, 34 Ark. 582 (1879).

## SUMMARY

*TRACT 5340:* The Court concludes that no irregularity attended the sale of this property, and that Sarah E. Walker is, in any event, barred by F.S. 95.23 from asserting her claim thereto.

*TRACT 3913:* The Court concludes that the State of Florida is estopped to challenge the validity of Murphy Act deeds, Brevard County deeds Nos. 719 and 913, and that Sarah E. Walker is precluded from challenging the title of Edwin A. McQuaters and his successor, by virtue of McQuaters' adverse possession of the property in dispute in Tract 3913 save streets in Titusville Subdivision. As to the streets the Court concludes that Sarah E. Walker's predecessors lost all interest therein by dedication.

*TRACT 3912:* The Court concludes that the Murphy Act sale of this tract was absolutely void, that there was no

---

5. There is no evidence before the Court as to what policy, if any, the Trustees have adopted for redemption under F.S. 192.381, F.S.A. so that this Court cannot know whether the Trustees may require fair market value for the property, permit redemption for back taxes, interest and costs or just what course the Trustees may take pursuant to the applicable Florida statutes.

**52**

adverse possession, that no statute of limitations presents a bar to intervenor's claim, and therefore, that Sarah E. Walker's right of redemption was not extinguished, and that the condemnation award standing in place of the land, shall be disposed of by the Trustees of the Internal Improvement Fund in accordance with F.S. 192.381, F.S.A., as they shall deem appropriate, subject to the condition that the Simmons estate be reimbursed for the purchase price plus all taxes subsequently paid on the property, together with interest thereon from the respective dates of payment in the event the Trustees in their discretion, determine that the fund should go to someone other than the Simmons Estate.

Judgment will be entered separately in accordance with these findings of fact and conclusions of law.

## ORDER

This cause came on for hearing on the motion of the Government for the Court to amend the judgment heretofore entered in this cause to require the Estate of G. M. Simmons to repay the $29,737.00 heretofore paid to the said estate from the registry of the Court pursuant to orders of distribution entered on August 2, 1963 and March 26, 1964.

 Counsel for the Estate of G. M. Simmons contends that because a notice of appeal has been filed that this Court lacks jurisdiction to consider and pass upon the motion of the Government. This Court is of the opinion that the issue raised by the Government's motion is supplemental to the issues determined by this Court's judgment of May 3, 1968, and that the notice of appeal as to those issues does not divest this Court of jurisdiction of determining this further supplemental matter.

This Court has heretofore found that as to Tract 3912 that because the deed to G. M. Simmons was void, that as of the date of taking, the title to said tract was vested in the Trustees of the Internal Improvement Fund and that therefore the award for said tract stood in the stead of the property. This Court's judgment left it to the Trustees of the Internal Improvement Fund to dispose of said funds within its discretion and in accordance with the applicable law and regulations.

 This Court must now consider that pursuant to the aforesaid orders of distribution providing for the payment of $29,737.00 to the Estate of G. M. Simmons, said sums were in fact paid to the estate. At that time the Trustees of the Internal Improvement Fund were a party to this proceeding and asserted no interest in the fund or title to the property. This Court concludes, therefore, that although the Trustees were entitled to the award for the property as set forth in this Court's opinion of May 2, 1968, that because the Trustees were a party to the proceeding and affirmatively asserted no interest in Tract 3912, other than oil and mineral rights, that the Trustees cannot now ask that the monies be repaid into the registry of the Court. Since Sarah Walker has no right, title, or interest in the fund other than through the Trustees, as the successor in interest to the prior owner, she cannot compel such repayment where the Trustees have by their action precluded the necessity therefor.

This ruling is not inconsistent with that portion of the findings of fact and conclusions of law dated May 2, 1968, wherein this Court held that the waiver of the Trustees could not extinguish rights of Sarah Walker, if any. But as it developed, Sarah Walker had no interest directly in either the property or the fund but had an interest only in the property or fund if still held by the Trustees. Since the Trustees have divested themselves of the fund, Sarah Walker has no interest thereto. For the foregoing reasons therefore, it is,

Ordered that the motion of the Government to amend the final judgment to require the Estate of G. M. Simmons to repay the $29,737.00 heretofore withdrawn from the registry of the Court be and is hereby denied.